364 P.2d 176

D. L. ZOLLINGER, Plaintiff-Respondent,

v.

BIG LOST RIVER IRRIGATION DISTRICT, Defendant-Appellant.

No. 8921.

Supreme Court of Idaho.

July 10, 1961.

Rehearing Denied Sept. 6, 1961.

Robert M. Kerr, Jr., Blackfoot, George L. Barnard, Idaho Falls, for appellant.

Anderson, Kaufman & Anderson, Boise, for respondent.

SMITH, Justice.

The companion proceeding in eminent domain, hereinafter referred to, is Custer

County Civil No. 1754, Big Lost River Irrigation District v. Zollinger, designated in this Court as appeal No. 8920, reported in 83 Idaho 401, 363 P.2d 706.

Respondent commenced this action, Custer County Civil No. 1715, to recover from appellant Irrigation District, hereinafter called the district, actual damages allegedly suffered during the years 1953 to 1957, inclusive, by the flooding of certain of respondent's crops and lands at the instance of the district, and for exemplary damages. The trial court rendered judgment in favor of respondent for actual damages suffered during 1954 of $500; 1956 in the sum of $1,000, and 1957 in the sum of $2,000, and for punitive damages of $2,500. The district has appealed from the judgment.

■ The trial court found that respondent failed to prove any damages suffered during the years 1953 and 1955. Respondent not having cross-appealed from the judgment, the issues here relate only to the damages adjudged in favor of respondent for the years 1954, 1956 and 1957, and to the exemplary damages.

The district owns Mackay Dam and Mackay Reservoir in Custer County. The crest of the spillway of the dam was originally constructed at an elevation of 6,061.6 feet above sea level in order to impound waters in the reservoir. The dividing line between the reservoir and respondent's land during the time involved in this action was fixed at the contour line of 6,062 feet elevation above sea level, in accordance with elevations used in constructing the dam and reservoir. Respondent owns approximately 1,197 acres adjacent to the reservoir, which he utilizes for production of livestock and crops necessary to the livestock operation.

Beginning with the year 1954 the district elevated its dam and spillway to a crest of 6,066.6 feet above sea level in order to increase the water storage capacity in the reservoir. Resultant raises in elevation of water impounded in the reservoir caused flooding and erosion in and upon respondent's land situate adjacent to the land occupied by the reservoir. This, respondent alleged, caused deposit of debris and trash, such as logs, limbs, brush and driftwood, and deposit of sand and silt upon, and resultant destruction of, certain of his growing crops in and upon his land adjacent to the reservoir, to his damage in the sum of $3,000 for each of the years 1954, 1956 and 1957. Respondent further alleged that the district's acts in the premises were willful and malicious, knowingly committed over respondent's objections and in disregard of his demands that the district refrain therefrom, for which reasons respondent prayed for punitive damage in the sum of $1,500, for each of such years.

The district by its answer admitted certain flooding of respondent's land but de-

nied that respondent suffered damages in excess of $790.

The district by its assignments of error questions the sufficiency of the evidence to sustain the respective awards of actual damages to respondent for the years 1954, 1956 and 1957. We therefore shall review the record only so far as to ascertain whether there is sufficient competent evidence to sustain the findings and judgment of the trial court as regards each award of actual damages.

The district furnished its records of guage measurements of heights of water impounded in its reservoir above the 6,062 contour level during the 5-year period 1953 to 1957, inclusive, which respondent introduced in evidence. The trial court found, in accordance with those records, that the district impounded water in its reservoir above the contour line of 6,062 feet above sea level, during periods, to levels and to respondent's damage as follows:

| Period of Time | To Contour Level | Damages |
| --- | --- | --- |
| June 28 – July 4, 1954 | 6063 feet | $ 500 |
| May 26 – June 8, and June 21 – July 12, 1956 | 6064.6 feet | $ 1,000 |
| May 25 – July 24, 1957 | 6066.35 feet | $ 2,000 |

and that the resultant floodings caused seepage and saturation of, and deposit of silt and debris upon, defendant's adjacent land with consequent damage and destruction of portions of his hay and pasture

crop; and in effect that the flooding to higher levels during each succeeding year after 1954 caused additional encroachments in and upon respondent's adjacent land.

Respondent's many photographs introduced in evidence portrayed the deposits of debris upon various portions of his land. He testified that in 1954 he lost portions of his hay and pasture crop attributable partly to actual flooding and partly because areas, although not actually flooded, were rendered inaccessible for utilization of the crops because, in instances, of the bogginess, and in other instances, of the presence of the debris-strewn condition, of the land; and because certain roadways were destroyed.

Respondent testified that in 1954 he lost portions of his hay and pasture crops attributable to the flooding. He estimated his loss of hay at 225 tons having an approximate net worth of $15 to $16 a ton, and he referred to portions of his pasture as adversely affected.

Respondent testified that he removed a portion, but not all, of the debris deposited on his land during 1954, and paid labor in the sum of $45; and that to have cleared his lands of the debris would have cost $825, exclusive of his own efforts.

Respondent introduced in evidence his billing of November 30, 1954, to the district,

listing certain damage for that year as follows:

"* * * from muddy waters backed up on hay meadow, making it impossible to cut hay ........................$450.00

For labor in cleaning off driftwood and rubbish ........... 45.00."

There is sufficient competent evidence to sustain the trial court's award of $500 to respondent for his actual damages suffered during the year 1954.

Respondent estimated his 1956 loss of hay crop attributable to the flooding at 150 tons of the net value of $15 to $16 a ton, also estimated the cost of removing the 1956 deposit of debris at "a little more" than for prior years.

Mr. McDowell, one of respondent's expert witnesses, who visited the ranch on occasions for the purpose of determining damage occasioned by the flooding during the years 1956 and 1957, based his calculations of damages for the year 1956 upon several factors, i. e., "the amount of litter and debris that were deposited there, and the cost that I feel would take to restore that in as good a condition as it was before. * * * I also considered * * * loss of use." His testimony then appears:

"Q. * * * What was your determination of the loss of use that year [1956]? A Sixteen hundred and fifty [$1650.00] dollars.

"Q. What was your determination of the cost of removing the debris? A. Fourteen hundred [$1400.00] dollars.

*    *    *    *    *    *

"I felt that also the crossings that were washed out and that part of the fence destroyed above the 62 [6200 contour level] would be an additional $600, or a total of $3,650."

We are of the view that the evidence is sufficient to sustain the trial court's award of $1,000 to respondent for his actual damages suffered during 1956.

Respondent testifying as to his 1957 damage from flooding mentioned that the district's reservoir was raised to a higher level and that the water was on his land for a longer period than during the previous floodings. This is shown by the district's record of guage measurements of heights of its impounded water, upon which the court based its findings in this regard.

Respondent then testified that the flooding had caused changes in grasses and vegetation to varieties less desirable and less palatable to livestock; also that the 1957 flood water caused the channel of Big Lost River to become filled, causing overflow of the river on both sides of its original channel, and to flow in two courses onto respondent's land thereby covering it in places with sediment, and in places washing the land away; that because such flood-

ing washed out a road, respondent couldn't get across the Big Lost River to harvest crops in a certain area, unless by constructing a new road; that he lost an estimated 225 tons of hay having a net value of approximately $15 a ton; that silt deposited on his hay crops rendered them unpalatable for livestock food and difficult to harvest, for which reasons it was not worthwhile to harvest crops so affected; that the debris from the 1956 flooding was moved to a higher level by the 1957 flooding together with additional debris attributable to the later flooding. Respondent estimated the cost of clearing the 1957 deposit of debris to be about the same as for clearing the 1956 debris.

Mr. McDowell, an expert witness, testified in regard to respondent's actual damages occasioned by the 1957 flooding. He estimated those damages at a total of $3,650, as for the previous year, although the 1957 flooding reached a higher level than the preceding year. This figure included $1,400 as an estimate to clear the 1957 debris, as he had estimated for clearing the 1956 debris. He disagreed with the suggestion of the district's counsel that the debris for both years could be cleared at the same time at a cost of $1,400; the work of clearing would cost more because of the additional volume of debris deposited during 1957.

We conclude that the evidence is sufficient to sustain the trial court's award of $2,000 for respondent's actual damages suffered during the year 1957.

■ The evidence, being substantial and competent, although conflicting, as it relates to the issue of respondent's actual damages, and the finding of the trier of the facts on such issue, this Court will not disturb the findings and judgment based thereon for such damages. I.C. § 13–219; White v. Ames Mining Company, 82 Idaho 71, 349 P.2d 550.

The district assigns error of the trial court in awarding the sum of $2,500, or any sum, as punitive damages against the district.

Respondent alleges that the district's acts in the premises were willful and malicious, and in disregard of his demands to refrain from flooding his land adjacent to the reservoir.

Respondent's testimony, in respect to which there is no conflict, indicates that he requested a member or members of the district's board of directors not to flood, or to desist from flooding, his land; that he met with the district's board one or two times; that the district's officers asked him to meet with them, and indicated willingness to make settlement, and attempted to arrive at and pay his actual damages sustained; and particularly that the officers tried to settle on some basis so as to permit the district to continue raising the elevation of its im-

pounded water, although causing some flooding of respondent's land.

■ The rule with respect to recovery of punitive damages is clearly expressed by this Court in the early case of Unfried v. Libert, 20 Idaho 708, 728–729, 119 P. 885, 891, as follows:

"As we understand the rule of exemplary or punitive damages, they cannot be recovered unless the evidence shows clearly that the action of the wrongdoer is wanton, malicious, or gross and outrageous, or where the facts are such as to imply malice and oppression, in which case the law authorizes the court to allow a sum of money as punishment to the wrongdoer for the injury done. * * *

"We think the general rule recognized by the weight of authority is that exemplary or plenary damages may be allowed where the injury complained of is attended by acts of the wrongdoer which show willful malice, fraud, or gross negligence."

See also Gunnell v. Largilliere Co., 46 Idaho 551, 269 P. 412; Crystal Dome Oil & Gas Co. v. Savic, 51 Idaho 409, 6 P.2d 155; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Harrington v. Hadden, 69 Idaho 22, 202 P.2d 236; Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020.

■ Exemplary damages are not a favorite of the law, and the power of awarding them should be exercised with great caution. 15 Am.Jur., Damages, § 268, p. 704; Williams v. Bone, 74 Idaho 185, 259 P.2d 810.

■ We are constrained to the view that the evidence is insufficient to show willful malice or fraud or gross negligence on the part of the district or its officers. We therefore rule that the trial court erred in awarding punitive damages. This ruling renders moot the question which the district raises, whether punitive damages may be awarded against a quasi-municipal corporation.

■ The district by further assignments contends that the trial court erred in failing to segregate damages as follows: first, the amount of damages awarded respondent for loss of his hay crops and pasture, and second, the amount of so-called flood damages to premises awarded respondent, i. e., for destruction of portions of his land and deposit of debris thereon; also erred in failing to recognize merger of the amount of flood damages, into the judgment for damages for the premises taken in the eminent domain proceeding; and erred in failing to provide for remission or offset in favor of the district of the amount of flood damages, upon payment of the judgment in the eminent domain proceeding (Big Lost River Irrigation District v. Zollinger, 83 Idaho 401, 363 P.2d 706). These assignments are meritorious.

I.C. § 7–712 required determination of damages for the area taken in the eminent domain proceeding as of June 27, 1958, the date summons issued in that proceeding.

Respondent, in determining a valuation as of June 27, 1958, of premises sought to be taken by the district by eminent domain, made no deduction for the existing flood damage for which he seeks recovery herein. This aspect of his case is shown by his testimony on cross-examination:

"Q. In determining a valuation of June 27, 1958 [eminent domain proceeding], did you make any deduction for any damage by reason of debris or prior floodings through your property [damage action] * * * ?

\* \* \* \* \* \*
"A. No, I didn't. * * *."

Mr. McDowell, respondent's expert witness, in determining his valuation, proceeding upon this same basis, as shown by his testimony, on cross-examination:

"Q. When you calculated the value of the place as of June 27, 1958 [eminent domain proceeding], did you deduct this $2800 damage from debris [damage action]? A. * * * I did not calculate that in my estimate."

This theory of the case, as advanced by respondent, appears undisputed. Therefore, the evidence supports the district's taking, by eminent domain, of premises in a condition undamaged, or without deduction for damage or depreciation, due to the flooding; and since in the case at bar respondent has recovered a judgment liquidating his flood damages (as yet not segregated from his crop damages), it becomes clear that payment of both judgments in toto to respondent would accord him double recovery of the flood damages involved herein. It is equally clear that the items of flood damages became merged in the judgment for the value of the area taken in the eminent domain proceeding. Even so, we have affirmed the judgment in the eminent domain proceeding, deeming it advisable to provide, in the case at bar, for the adjustment to which the district is entitled.

The judgment against the district in respondent's favor for $2500 exemplary or punitive damages is reversed.

The judgment against the district in respondent's favor for his actual damages suffered during the years 1954, 1956 and 1957 in the respective sums of $500, $1,000 and $2,000 is affirmed as to the amounts adjudged, and the cause is remanded with instructions as follow:

First, to segregate the amounts of total actual damages so adjudged, i. e., the amount of respondent's crop damages, and the amount of flood damages to his premises, and

Second, additionally to adjudge, upon the district's payment to respondent of the

judgment entered in the eminent domain proceeding (Custer Civil No. 1754), and payment of the amount or proportion of the judgment awarded herein (Custer Civil No. 1715), as crop damage, that the amount or proportion of the judgment herein awarded as flood damage shall be remitted to the district.

Costs to appellant.

TAYLOR, C. J., and KNUDSON, Mc-QUADE and McFADDEN, JJ., concur.