520 P.2d 240

Helen **THOMPSON**, a single woman,
Plaintiff-Respondent,

v.

Russell **DALTON**, Defendant-Appellant.

No. 11333.

Supreme Court of Idaho.

March 22, 1974.

Dennis E. Wheeler, Hull, Hull & Wheeler, Wallace, for defendant-appellant.

David A. Frazier, McCabe & Frazier, Coeur d'Alene, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from that portion of a judgment awarding punitive damages in an action for conversion.

The following summary, most of which is not disputed by the appellant, is based on the findings and conclusions of the district court. On June 17, 1965, Andrew and Bernadine Burlingham, husband and wife, not parties to this action, executed a promissory note in favor of the First National Bank of Wallace, Idaho. The note was secured by a chattel mortgage on a mobile home. The Burlinghams executed the note and mortgage to finance the purchase of the mobile home from Russell Dalton, who conducted a trailer sales business in Kellogg, Idaho. Dalton endorsed the promissory note as guarantor.

On March 5, 1969, the Burlinghams executed a written lease of the trailer for a term of one year to plaintiff-respondent Helen Thompson. At all pertinent times, she was in lawful possession of the mobile home under the terms of the lease from the Burlinghams. Mrs. Thompson resided in the mobile home, which was located on real property owned by her. She kept various items of personal property in the mobile home including furniture, dishes, food, clothing, cash and other personal belongings.

The Burlinghams became delinquent in their payments on the promissory note to the bank. At some time between June 10, and June 20, 1969, appellant Dalton and Deputy Sheriff Charles Rust of Kootenai County, Idaho, met and spoke with respondent Thompson at the mobile home. Deputy Rust was there to collect delinquent taxes on the mobile home, which appellant Dalton paid at that time. Dalton was then prepared to take possession and remove the mobile home, but Deputy Rust advised him that he should see an attorney as Mrs. Thompson was then living in the mobile home. The court found that Rust also said to Dalton that he did not think that the mobile home could be taken from her without a court order. Appellant argues that Rust did not mention a court order, but this finding is based on substantial competent, though conflicting, evidence and will not be disturbed. Ivie v. Peck, 94 Idaho 625, 626, 495 P.2d 1110 (1972). Mrs. Thompson was visibly upset and disturbed by Dalton's threat to take possession of the mobile home.

On or about June 20, 1969, appellant Dalton spoke with Mrs. Thompson at the mobile home and stated that he was going to take possession of it, because the payments on the note and chattel mortgage were delinquent. Mrs. Thompson informed Dalton that she claimed possession of the mobile home by virtue of the lease from the Burlinghams.

There was no contact between appellant Dalton and respondent Thompson between June 20, 1969, and July 3, 1969, although Dalton alleges that he tried to telephone respondent and was unable to reach her. On July 3, Dalton paid the balance owing on the Burlinghams' promissory note to the Wallace bank. After doing so, he removed the mobile home from the property of the respondent. Meanwhile, on July 1, 1969, Mrs. Thompson had taken her daughter to Spokane, Washington, for hospitalization and remained there until the evening of July 3, when she returned home and found that the mobile home had been removed from her property, together with her personal belongings. She had no place to eat or sleep, and slept in her car that night and the following night. Mrs. Thompson did not see her personal belongings again until July 12, 1969 when appellant Dalton delivered them to the home of Mrs. Thompson's daughter in Coeur d'Alene, Idaho. During the period of time between July 3, and July 12, Mrs. Thompson was without her money, food and clothing. The removal of the mobile home and her possessions caused her great mental stress and emotional disturbance.

The district court concluded that on July 3, 1969, upon payment of the balance ow-

ing on the promissory note, appellant Dalton became subrogated to the rights of the bank as chattel mortgagee of the mobile home.[1] Because the chattel mortgage to the bank was executed before the effective date of the Uniform Commercial Code in Idaho (December 31, 1967), the law in effect at the time of execution governed foreclosure procedure. I.C. §§ 28–10–101, 28–10–102. I.C. § 45–1109 provided that a chattel mortgage could be foreclosed by two methods. One was by notice and sale under a summary procedure and the other was by an action in district court, pursuant to I.C. § 6–101. These were the exclusive methods for foreclosure of a chattel mortgage under the law applicable to this case. Adair v. Freeman, 92 Idaho 773, 451 P.2d 519 (1969); Peterson v. Hailey Nat. Bank, 51 Idaho 427, 6 P.2d 145 (1931); Garrett v. Soucie, 46 Idaho 289, 267 P. 1078 (1928).

The district court found and concluded that at the time of taking the mobile home from the real property of respondent Thompson, Dalton failed to comply in any respect with the requirements of I.C. § 45–1110[2] and 45–1111[3] which governed the duties of the chattel mortgagee in a summary foreclosure proceeding.

The district court further found that because Mrs. Thompson was lawfully in possession of the mortgaged mobile home, she was entitled to contest Dalton's right to foreclose under the provisions of I.C. § 45–1115,[4] and that when appellant Dalton took possession of the mobile home and Mrs. Thompson's personal belongings, he violated her property rights.

Except where noted, the above narrative is conceded to be correct by appellant Dalton, including his complete failure to comply with the proper procedures for foreclosing a chattel mortgage. However, the district court made the following further findings to which appellant assigns error. Dalton intentionally engaged in wrongful conduct toward Mrs. Thompson, either with the purpose of inflicting emotional distress, or under such circumstances that any reasonable person should have known that such would result. As a direct and natural result of Dalton's wrongful acts, respondent suffered emotional shock, men-

1. As neither party has excepted to this conclusion, we will accept it as correct for the purposes of this opinion.

2. I.C. 45–1110. "*Summary foreclosure—foreclosure by notice and sale—affidavit.*—In proceeding to foreclose by notice and sale, the mortgagee, his agent or attorney, must make an affidavit stating the date of the mortgage, the names of the parties thereto, a full description of the property mortgaged, and the amount due thereon. Such affidavit shall be sufficient authority to demand and receive possession of the property, if the same can be taken peaceably, but if it can not be so taken, then such affidavit must be placed in the hands of the sheriff of the county or constable in the precinct where the property is located, together with a notice signed by the mortgagee, his agent or attorney, requiring such officer to take the mortgaged property into his possession and sell the same.

"Provided, however, that the mortgagee, his agent, or attorney, may elect to place said affidavit and notice in the hands of the sheriff or constable in the first instance, without first attempting to obtain peaceable possession by personal demand; and, upon said election being set forth in the affidavit aforesaid,

said sheriff or constable shall immediately proceed hereunder as provided by statute for the foreclosure of chattel mortgages by notice and sale by the sheriff or constable."

3. I.C. 45–1111. "*Service of Affidavit.*—The affidavit must be personally served upon the mortgagor and upon the person having possession of the mortgaged property, in the same manner as is provided by law for the service of a summons. At the time of the service of the affidavit, the person or officer making such service must also serve upon the same persons, a notice signed by himself setting forth a full description of the property, the amount claimed to be due by the mortgagee, and the time and place of sale: provided, that if the mortgagor can not be found within the county wherein the mortgage is being foreclosed, the general notice of sale directed in the next section is sufficient service upon the mortgagor of both said affidavit and notice."

4. I.C. § 45–1115. "*Contest of foreclosure.*— The right of the mortgagee to foreclose, as well as the amount claimed to be due, may be contested in the district court by any person interested in so doing, for which purpose an injunction may issue if necessary."

tal trauma, degradation and humiliation. Dalton's conduct was gross and outrageous and a conscious and wilful disregard of Mrs. Thompson's rights. In depriving Mrs. Thompson of a place of shelter, Dalton's actions threatened her safety. When Dalton removed the mobile home and Mrs. Thompson's personal possessions, he was engaged in a business practice.

Based on its findings of fact and conclusions of law, the district court awarded Mrs. Thompson $1.00 nominal damages for invasion of her property rights, $1,000 damages for mental trauma and emotional shock, and $5,000 punitive damages. On this appeal, Dalton contests *only the award of punitive damages*. He contends that either this is not a proper case for the award of punitive damages or alternatively, that the punitive damages award of $5,000 was excessive.

█ This Court has employed a variety of formulas for characterizing the type of conduct which warrants the imposition of punitive damages. The one most frequently invoked originated in the early case of Unfried v. Libert, 20 Idaho 708, 728–729, 119 P. 885, 891 (1911) where this Court said:

"As we understand the rule of exemplary or punitive damages, they cannot be recovered unless the evidence shows clearly that the action of the wrongdoer is wanton, malicious *or* gross and outrageous, or where the facts are such as to imply malice and oppression * * *.

\* \* \* \* \* \*

"We think the general rule recognized by the weight of authority is, that exemplary or plenary damages may be allowed where the injury complained of is attended by acts of the wrongdoer which show wilful malice, fraud *or* gross negligence." (Emphasis added)

More recent cases have spoken in terms of "conscious and wilful disregard of [plaintiff's] rights." Jolley v. Puregro, 94 Idaho 702, 708, 496 P.2d 939, 945 (1972), and "[arbitrary action] without regard for [plaintiff's] rights and interests." White v. Doney, 82 Idaho 217, 224, 351 P.2d 380, 384 (1960). Contrary to appellant's assertions, there is no overwhelming significance attached to the word "malice" and its omission from the findings of the district court does not invalidate the award of punitive damages in the instant case. *See* the instruction to the jury on punitive damages approved by this Court in Boise Dodge, Inc. v. Clark, 92 Idaho 902, 906–907, 453 P.2d 551 (1969). *See also* Douglas v. Humble Oil & Refining Company, 251 Or. 310, 445 P.2d 590, 592 (Or.1968).

We consider that Dalton's conduct can properly be characterized as gross and outrageous and a conscious and wilful disregard of Mrs. Thompson's rights.

█ Appellant contends that the district court erred in refusing to amend its findings of fact to include certain circumstances which allegedly have a bearing on the property of the district court's award of punitive damages. He suggests that the following factors negate the conclusion that his conduct was gross, outrageous or oppressive. First, during their conversation on June 20, 1969, Dalton had suggested that Mrs. Thompson attempt to obtain a loan and purchase the trailer herself. If Mrs. Thompson were relying on this part of their conversation, as a possible opportunity to save her home, then Dalton's actions in removing it without further warning would seem to suggest irresponsibility, rather than concern for Mrs. Thompson's well-being. Secondly, appellant points out that he had only Mrs. Thompson's oral assurances regarding the existence of the lease, and that he had never seen her inside the trailer. We consider that appellant had ample notice of Mrs. Thompson's occupation and possession of the trailer. There is no requirement in Idaho that a one year lease of personal property be recorded and is otherwise invalid against third parties as appellant seems to suggest. Mrs. Thompson informed Dalton that she had a lease. Deputy Rust told appellant that respondent was living in the mobile home. Furthermore Dalton's testimony that he did not know anybody had any be-

longings in the trailer is completely inconsistent with his testimony that on June 13, 1970, he had asked Mrs. Thompson to remove her belongings from the trailer.

Appellant implicitly suggests that because he was protecting his own interests, his conduct cannot be characterized as malicious or oppressive. He points to testimony that the insurance had lapsed on the mobile home, that he paid the delinquent taxes on the mobile home so that it would not be levied on to satisfy a tax lien, and that when he took possession, the mobile home was in a state of disrepair. We note that at the time Dalton paid the taxes, his only apparent interest in the trailer or the financial transactions between the Burlinghams and the bank was as guarantor on the promissory note. He had neither title, a mortgage lien nor the right to possession of the trailer.

Assuming that Dalton became subrogated to the rights of the bank under the chattel mortgage, he did not acquire title or the right to immediate possession. In Idaho, a chattel mortgage creates a lien and does not divest the mortgagor of title. Forbush v. San Diego Fruit & Produce Co., 46 Idaho 231, 239, 266 P. 659 (1928). The only lawful means for a chattel mortgagee to take possession of the mortgaged chattel is by complying with the statutes governing foreclosure. Arens v. Scheele, 63 Idaho 189, 119 P.2d 261 (1941). *See also* Adair v. Freeman, *supra*.

The mortgage from the Burlinghams to the bank forms part of the record on this appeal. We note that the mortgagor was to pay all taxes, secure insurance, maintain the property properly, and refrain from encumbering or disposing of it. In case of default, the mortgage provided for foreclosure "by any method provided by the laws of the State of Idaho." In light of the explicit terms of the mortgage, Dalton's ownership of a trailer sales business (which would seem to suggest some familiarity with secured transactions), and Deputy Rust's cautions regarding consulting an attorney and obtaining a court order, we are not persuaded that Dalton's actions were undertaken in innocence or good faith.

The cases relied upon by appellant are easily distinguished from the instant case. In both Unfried v. Libert, *supra*, and Gunnell v. Largilliere, 46 Idaho 551, 269 P. 412 (1928), which involved chattel mortgages, the mortgagee resorted to legal process to obtain foreclosure of the mortgage. In *Unfried*, punitive damages were disapproved because there was no showing of "willful malice or any fraud or gross negligence," on the part of the defendant. In *Gunnell* the defendant had attempted to foreclose before the debt upon which the foreclosure was grounded became due, but the record again failed to show "willful fraud, malice or gross negligence." 46 Idaho at 560, 269 P. at 415. Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954) was an action for breach of contract where there was "no evidence of oppression, fraud, or malice", nor any evidence of gross negligence. 75 Idaho at 459, 272 P. 2d at 1025. Zollinger v. Big Lost River Irrigation Dist., 83 Idaho 411, 364 P.2d 176 (1961) was an action for trespass to land where the evidence did not show "wilful malice or fraud or gross negligence." 83 Idaho at 418, 364 P.2d at 179.

Under the facts of the instant case, however, an award of punitive damages was justified.

We turn now to the question of whether the district court's award of $5,000 in punitive damages was permissible under Idaho law. In the 1960 case of White v. Doney, 82 Idaho 217, 351 P.2d 380 (1960), under substantially different facts, this Court reduced an award of punitive damages for the wrongful repossession of a trailer house, under an installment sales contract, from $1,400 to $900. However, the *White* case does not necessarily mandate a reduction of the award of punitive damages in the instant case. In the recent case of Cox v. Stolworthy, 94 Idaho 683, 496 P.2d 682 (1972), this Court undertook a comprehensive review of the

law of punitive damages, and established certain guidelines to assist in determining the proper amounts of such awards. We recognized that there were "at least three" factual patterns in Idaho cases which have warranted the imposition of punitive damages. We characterized the first two patterns as follows, 94 Idaho at 691, 496 P.2d at 690:

"The first concerns those cases involving deceptive business schemes operated for profit and often victimizing numerous members of the public aside from the plaintiff. Clearly in such cases the award of exemplary damages should aim at making the cost of such repetitive antisocial conduct uneconomical. Thus, for example, in Boise Dodge, Inc., v. Clark, [92 Idaho 902, 453 P.2d 551 (1969)], cross-complainant was one victim of a fraudulent scheme. A generous award of exemplary damages served to remove the profit factor from the whole scheme. *See*, Comment, 'Automobile Dealership Fraud: Punitive Damages,' 7 Idaho L.R. 117 (1970). *Cf*. Barth v. B. F. Goodrich Tire Co., 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968).

"The second category is illustrated by the Village of Peck v. Denison decision, [92 Idaho 747, 450 P.2d 310 (1969)]. There defendants' repeated actions endangered the physical well-being and health of the several hundred citizens of the town. Where actual physical harm is threatened or actually inflicted *on a person or persons* the situation rises to a serious level of affairs. In such a case where the plaintiff's physical well-being is endangered, a substantial punitive damages award finds justification in the nature of the malicious conduct itself as well as the quality of the injury sustained." (Emphasis added)

This Court then went on to say, 94 Idaho at 691, 496 P.2d at 690:

"The case at bar fits neither of these categories. However, a third category of cases does seem applicable. These cases typically involve nonviolent but nevertheless serious disputes between two parties. Often the dispute centers on an interest in real or personal property or an interference with a business operation. Here the action concerned an act of trespass to the plaintiffs' real property but no lives were endangered and there was no indication the defendant made a practice of acting in this fashion.

"In such situations in the past this Court has not looked favorably on large punitive damage awards for the apparent reason that the nature of the dispute did not warrant a severe penalty to the wrongdoer—an award out of proportion both to the activity complained of and the damages incurred."

We recommended that "ordinarily," in a case of the third type, punitive damages should be measured against 1) the plaintiff's reasonable and necessary attorney fees, 2) other related expenses not ordinarily recoverable, such as expert witness fees, and 3) reasonable reimbursement for the inconvenience, time and effort required to bring the action. Having determined that the dispute in the *Cox* case fell into the third category, we there reduced an award of punitive damages from $5,000 to $2,000.

Appellant urges that the facts of the instant case place it in the third category delineated in *Cox*. Appellant stresses that his actions did not endanger the health and safety of large numbers of people, nor did they involve a business scheme victimizing numerous members of the public. Therefore, appellant submits that if punitive damages are upheld, Mrs. Thompson is only entitled to attorney fees, related expenses and a modest sum to reimburse her for the time and inconvenience of bringing the action. We are not persuaded by appellant's contention.

As we implicitly recognized in *Cox*, the complexities of human interaction occasionally give rise to factual situations which cannot readily be subsumed under one of the three *Cox* categories. Further-

more, we explicitly stated in the recent case of Jolley v. Puregro Co., *supra,* 94 Idaho at 711, 496 P.2d at 948:

"By our specific attention [in Cox] to the facts in *Boise Dodge* and *Village of Peck* cases, we do not preclude the possibility that there may be other similar situations in which aggravating and dire circumstances necessitate the departure from the general rule of exemplary damages in Cox v. Stolworthy. However, the awarding of additional exemplary damages, in excess of those provided in that general rule, should be limited to the most extreme circumstances * * *."

The instant case, however, does not require a departure from the *Cox* classifications. In *Cox* we chose the case of Village of Peck v. Denison, *supra,* to illustrate one type of situation in which substantial punitive damages could properly be awarded. In that case the actions of the defendants threatened the water supply of a town of two hundred people. *Cox* did not, however, stand for the proposition that the seriousness of the defendant's conduct is to be judged solely by the *number* of people whose health and safety is endangered. Such would be an unduly constricted interpretation of our holding. As noted earlier, we spoke in *Cox* of actual or threatened harm to the physical well-being of "a person or persons." 94 Idaho at 691, 496 P.2d 939.

This action was tried after both the *Cox* and *Jolley* opinions were handed down and the district court relied on the classification system of the *Cox* case in arriving at its award of $5,000 punitive damages. The district court specifically found that by depriving Mrs. Thompson of her home and leaving her without a place of shelter, appellant Dalton threatened her safety. Under the facts of this case, we are not disposed to disagree. We agree that one instance of unconscionable business conduct, such as that present in the instant case, cannot properly be characterized as a "business practice." *See* Jolley v. Puregro, *supra,* Boise Dodge, Inc. v. Clark, *supra.*

Nevertheless, as the $5,000 punitive damages award can be sustained on other grounds, the district court's finding that the wrongful conduct of the defendant was "committed while he was in pursuit of a business practice," is harmless error.

The judgment in favor of respondent Thompson is affirmed in its entirety. Costs to respondent.

McQUADE and McFADDEN, JJ., concur.

BAKES, Justice (concurring specially):

I don't believe that the trial court was in error when it concluded that the wrongful conduct of the defendant was "committed while he was in pursuit of a business practice" as that phrase was used in Jolley v. Puregro, 94 Idaho 702, 496 P.2d 939 (1972). The question is moot in this case, however, because in either event the same result is reached.

DONALDSON, Justice (concurring and dissenting).

I concur in that portion of the opinion affirming judgment in favor of respondent. However, because I believe that the case falls within the third category, as established in Cox v. Stolworthy, 94 Idaho 683, 496 P.2d 682 (1972), rather than the second, I respectfully dissent from that portion of the opinion affirming the award of punitive damages. An award of $5,000.00 punitive damages appears to me to be excessive under the facts of this case and it should be reduced to $2,000.00.

In Cox v. Stolworthy, *supra,* this Court created three categories of cases to provide guidance in determining what amount of punitive damages are proper in a given case. Into the first two categories, in which substantial awards are proper, fall those cases involving either deceptive business practices operated for a profit, often at the expense of the public, or malicious conduct endangering the physical well-being of others. In both, the need to prevent recurrence of the conduct in the future is obvious. The third category, and

the one into which this case appears to me to fall, involves those cases described in Cox v. Stolworthy, *supra,* as follows:

"These cases typically involve non-violent but nevertheless serious disputes between two parties. Often the dispute centers on an interest in real or personal property or an interference with a business operation. Here the action concerned an act of trespass to the plaintiffs' real property but no lives were endangered and there was no indication the defendant made a practice of acting in this fashion." 94 Idaho at 691, 496 P.2d at 690.

The case before the Court involves a dispute between two parties over possession of property. The actions of the appellant did not endanger the life of respondent. Nothing in the record indicates that the appellant was acting with a crass profit motive nor does it appear that there is any danger that appellant will repeat his conduct in the future. Thus, there is no justification for awarding damages in excess of the amount required to compensate respondent for the inconvenience and hardship caused by the appellant and the expense of bringing the action. Thus, the following language from Cox v. Stolworthy, *supra,* is applicable:

"There is nothing in the record to reflect any future intent by the defendant to continue the activities, as was in Village of Peck v. Denison, nor any crass profit making scheme as present in Boise Dodge, Inc. v. Clark. Thus the necessity for the heavy deterrent and punishment aspect of those two cases is absent here." 94 Idaho at 688, 689, 496 P.2d at 687.

Because punitive damages are not favored in the law and should be awarded only with caution, Lewiston Pistol Club, Inc. v. Imthurn, 94 Idaho 264, 486 P.2d 275 (1971), the awarding of substantial punitive damages should be limited to exceptional cases such as those where the need to protect the public from fraudulent schemes or life endangering acts is present. *See* Boise Dodge, Inc. v. Clark, 92 Idaho

902, 453 P.2d 551 (1969); Village of Peck v. Denison, 92 Idaho 747, 450 P.2d 310 (1969). Where, as here, the dispute centers around the property rights of two individuals, punitive damages should be limited to those expenses which are not compensated by the jury's award of compensatory damages. Cox v. Stolworthy, *supra.* Therefore, I would reduce the amount of punitive damages awarded in this case to $2,000.00.