IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICHARD EGGLESTON, an individual, | ) | No. 34340-5-III |
| | ) | |
| Appellant / | ) | |
| Cross Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ASOTIN COUNTY, a public agency; and | ) | |
| ASOTIN COUNTY PUBLIC WORKS | ) | |
| DEPARTMENT, a public agency, | ) | |
| | ) | |
| Respondents / | ) | |
| Cross Appellants. | ) | |

PENNELL, J. — Richard Eggleston submitted several public records requests to

Asotin County related to work on the Ten Mile Creek Bridge Project (the Project). After

failing to receive copies of three specific documents, Mr. Eggleston filed a lawsuit against

the County alleging violations of the Public Records Act (PRA), chapter 42.56 RCW.

Mr. Eggleston's claims as to the first document were dismissed through summary

judgment. He later prevailed at a bench trial as to the remaining two documents and was awarded $49,385.00 in penalties and $50,133.67 in attorney fees, staff fees and costs. The parties cross appeal the trial court's rulings. We affirm.

## FACTS

This case concerns Richard Eggleston's multiple public records requests for three specific records from the County. The initial record sought is a January 2002 e-mail written by archeologist Kevin Cannell to Thomas Dean & Hoskins (TD&H), an engineering firm hired by the County. The other two records consist of preliminary Project drawing sets, referred to as "the April Plans" and "the July Plans." Clerk's Papers (CP) at 553.

*Background*

In 2001, Asotin County decided to replace the Ten Mile Creek Bridge. In November 2001, TD&H received a letter from the County confirming it had been selected to provide engineering services for the Project. The contract was entered into on March 4, 2002, and provided that: "[a]ll designs, drawings, specifications, documents, and other work products prepared by the CONSULTANT [TD&H] prior to completion or termination of this AGREEMENT are instruments of service for this PROJECT and are property of the AGENCY [Asotin County]." CP at 1029.

2

TD&H was concerned about possible archaeological sites in the Project area and retained the services of Kevin Cannell to perform a "preliminary archaeological and cultural review of the proposed roadway" for the Project. CP at 276. In its June 5, 2002, retention letter to Mr. Cannell, TD&H referenced a "Cultural Resource Compliance Scope of Work" that Mr. Cannell had sent to TD&H via e-mail on January 11, 2002. CP at 276, 1024.

*Requests regarding TD&H's agreement with archeologist Kevin Cannell*

Richard Eggleston is a resident of Asotin County. Mr. Eggleston made several requests, spanning 2004-2011, for correspondence between TD&H and Mr. Cannell. Of particular concern to Mr. Eggleston was the original solicitation for Mr. Cannell to perform archeological services on the Project and Mr. Cannell's response to the solicitation. *See* CP at 38. The County provided some materials in response to Mr. Cannell's requests, but it also noted Mr. Cannell was contracted through TD&H and, therefore, the County may not have all correspondence. Eventually, the County provided Mr. Eggleston a copy of Mr. Cannell's Cultural Resource Program Scope of Work that had been sent to TD&H in January 2002. *See* CP at 53. However, the County never provided a copy of the 2002 e-mail Mr. Cannell sent to TD&H along with his proposed scope of work.

*Commencement of the Project and discovery of archaeological sites*

Construction on the Project commenced during June 2010. But by October, crews working on the Project encountered human remains and realized they had unearthed Native American graves. The Project then stalled to allow for negotiations between the County, the Nez Perce tribe and other agencies on how to handle the remains. During this delay, the project plans went through numerous changes. A final set of plans for the Project were not completed until September 2012.

*Requests for "current sheets" of the Project plans and initiation of litigation*

Mr. Eggleston's next records request came on April 26, 2012. At this point, he did not ask for documents related to Mr. Cannell or his archaeological work. Instead, he sought copies of the current drawing sheets (the April Plans) for the Project. Mr. Eggleston indicated he had received page one of the April Plans[1] at a meeting with the County and he wanted to view the remaining pages. The County responded on May 16, 2012, claiming the April Plans were exempt from disclosure under RCW 42.56.280. The County reasoned that this exemption applied because the April Plans were preliminary

---

[1] Apart from the page Mr. Eggleston obtained at the County meeting, Mr. Eggleston had actually received a copy of the April Plans from the Nez Perce Tribe. Mr. Eggleston sought a copy of the plans at the behest of the tribe because the tribe did not fully trust the County and wanted to test the accuracy of its records.

drafts and the design for the Project was still in flux as discussions with the tribe continued. Until an agreement on the redesign was reached, the April Plans were exempt from disclosure.

Mr. Eggleston filed suit against the County on June 18, 2012, alleging violations of the PRA. Subsequent to filing suit, Mr. Eggleston submitted a request on July 17, 2012 for "current project plans." CP at 69. The County responded on July 19, 2012, and provided Mr. Eggleston with a set of documents, referred to in the record as "the Nez Perce submittal." 1 Verbatim Report of Proceedings (VRP) (Mar. 5, 2013) at 18; 1 VRP (Apr. 1, 2015) at 42; CP at 70. The County also indicated that it had fully responded to Mr. Eggleston's request and now considered it closed.

Mr. Eggleston's attorney sent a letter to the County's attorney on August 2, 2012, claiming the County's responses to Mr. Eggleston's request for plans were incomplete. Counsel explained Mr. Eggleston was looking for current project plans, not the Nez Perce submittal. Counsel asserted that if the County intended to withhold pages, a withholding log must be provided. The County responded on August 9, 2012, and offered further explanation as to why Mr. Eggleston's request was denied pursuant to RCW 42.56.280. The County explained Mr. Eggleston had been provided everything that had been submitted to the tribe. However, the materials provided to the tribe did not contain a complete copy of the preliminary project plan. Thus, nothing currently available had been

withheld. The County offered to provide the finalized plans to Mr. Eggleston when the documents were available.

Mr. Eggleston's attorney sent additional letters on August 24 and September 7, 2012, following up on the prior requests. The August 24 letter requested a withholding log and the September 7 letter clarified that the County had not complied with the requests for the April and July plans. Counsel reiterated that Mr. Eggleston had not requested the plans that were submitted to the Nez Perce Tribe. Instead, Mr. Eggleston had requested a complete set of plans as they existed on the date of his request. Although the County responded to the August 24 letter, it did not provide a withholding log. The County never responded to the September 7 letter.

Although the County did not provide Mr. Eggleston with copies of the April and July plans as requested, Mr. Eggleston did obtain copies of the documents. Mr. Eggleston had received a copy of the April Plans from the Nez Perce Tribe prior to ever requesting the documents from the County. The County ultimately provided Mr. Eggleston a copy of the April Plans on December 10, 2012. In addition, during January 2013, Mr. Eggleston received copies of the April and July plans at a pretrial deposition of a TD&H employee.

*Summary judgment*

The trial court initially addressed the merits of Mr. Eggleston's PRA complaint

6

through cross motions for summary judgment. With respect to Mr. Eggleston's requests regarding the 2002 e-mail from archaeologist Kevin Cannell, the court held the requested information was not a public record and that, in any event, those portions of Mr. Eggleston's complaint were untimely under the statute of limitation. The court ordered a trial on whether the County was entitled to withhold disclosure of the April and July plans.

*Trial, penalties, and attorney fees and costs*

After hearing from multiple witnesses over the course of a two-day bench trial, the trial court largely ruled in favor of Mr. Eggleston as to the April and July plans. The trial court determined that both sets of plans constituted public records and the County violated the PRA by failing to disclose the documents to Mr. Eggleston. The trial court specifically rejected the County's claim that the records were exempt from disclosure under RCW 42.56.280, which pertains to preliminary drafts, notes, recommendations, and intra-agency memoranda.

With respect to the statutory penalty, the trial court determined Mr. Eggleston had established two violations of the PRA pertaining to the April and July plans. Although Mr. Eggleston had made multiple requests for each of these plans, the trial court ruled that the multiple requests were followups, not new independent requests. Relying on the

No. 34340-5-III
*Eggleston v. Asotin County*

framework from *Yousoufian v. Office of Ron Simms, King County Executive*, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010) (*Yousoufian* II), the trial court analyzed a number of aggravating and mitigating factors before setting the penalty amount. The trial court then arrived at a penalty of $35.00 per day. Applied to a total of 1,411 days,[2] the total penalty award came to $49,385.00.

The trial court then addressed an award of attorney fees and costs to Mr. Eggleston based on the lodestar method. In determining the number of hours worked by counsel, the trial court indicated it had disregarded the time spent by counsel on Mr. Eggleston's claims that were dismissed through summary judgment, ignored entries related to other litigation and from contracted law firms, and adjusted seemingly duplicative or excessive time entries noting that some of the briefing in this case was excessive. Also, the trial court lowered the hourly rate for counsel's office staff from $95.00 per hour to $25.00 per hour, for 122.8 hours, due to a lack of evidence on the staff's training and qualifications. Lastly, the trial court set a reasonable hourly rate of $190.00 per hour for 233.3 hours of attorney time. The trial court awarded $44,327.00 for counsel's time, $3,070.00 for office staff time, and $2,736.67 for miscellaneous court costs for a total attorney fee and

_____

[2] From April 26, 2012 (date of request for the April Plans) until December 10, 2012 (when Mr. Eggleston received the April Plans) is 228 days. From July 17, 2012 (date of request for the July Plans) until October 13, 2015 (Day 1 of the penalty phase of trial since the July Plans were never produced by the County) is 1,183 days.

cost award of $50,133.67. A judgment against the County was entered shortly thereafter.

Mr. Eggleston appeals. The County cross appeals.

ANALYSIS

*Summary judgment dismissal of the 2002 e-mail claim*

The PRA is a broad public mandate, requiring that citizens be afforded access to public records. *Belenski v. Jefferson County*, 186 Wn.2d 452, 456-57, 378 P.3d 176 (2016). A public record "includes any [1] writing [2] containing information relating to the conduct of government or the performance of any governmental or proprietary function [3] prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(3). Although the PRA exempts certain records from production, the statute is to "be liberally construed and its exemptions narrowly construed" to promote public access to information. RCW 42.56.030.

In PRA litigation, a threshold question is whether requested information constitutes a public record. Our case law fails to provide clear guidance on who bears the initial burden of showing that a request made of a public agency was directed at a public record. Division One of this court has suggested the burden falls on the plaintiff. *Dragonslayer, Inc. v. Washington State Gambling Comm'n*, 139 Wn. App. 433, 441, 161

P.3d 428 (2007). However, our Supreme Court has stated, without equivocation, that the burden of justifying nondisclosure always falls on the government agency. *Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 522, 326 P.3d 688 (2014) ("The agency refusing to release records bears the burden of showing secrecy is lawful."); *Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1*, 138 Wn.2d 950, 958, 983 P.2d 635 (1999). Our review of whether a document constitutes a public record is de novo. *See Gronquist v. Dep't of Licensing*, 175 Wn. App. 729, 741-42, 309 P.3d 538 (2013).

The parties' dispute over the 2002 e-mail revolves around the threshold issue of whether the information sought by Mr. Eggleston meets the definition of a public record. No claim of exemption has been made. With respect to the conflict over the public record definition, the parties specifically debate whether the 2002 e-mail constituted something prepared, owned, used, or retained by the County, as a public agency.

It is uncontroverted that the 2002 e-mail was not prepared by the County and does not qualify as a public record under that basis. The 2002 e-mail was prepared by Mr. Cannell prior to TD&H hiring him as a subcontractor. Thus, the 2002 e-mail can only constitute a public record if it was owned, used, or retained by the County.

Mr. Eggleston claims the County owned and retained the 2002 e-mail based on language contained in the County's contract with TD&H. Specifically, the contract states that "[a]ll designs, drawings, specifications, documents, and other work products

10

*prepared by [TD&H]* . . . are property of [the County]." CP at 1029.[3] Again, the 2002 e-mail was prepared by Mr. Cannell, not TD&H. The contract language is inapplicable.

Because the 2002 e-mail was prepared by a private party, Mr. Eggleston's claims regarding the e-mail can only succeed if there are facts indicating the County "used" the 2002 e-mail as contemplated by the PRA. In order to have used the 2002 e-mail, the e-mail must have been "(1) employed for; (2) applied to; *or* (3) made instrumental to" the county's project or some other governmental function. *Concerned Ratepayers*, 138 Wn.2d at 960 (emphasis in original).

Mr. Eggleston claims the County used the 2002 e-mail when TD&H referred to the e-mail in a June 2002 letter. We disagree. TD&H's letter was written to Mr. Cannell in order to retain his services as an archaeological consultant. The letter references a scope of work sent to TD&H by Mr. Cannell "*via email* on January 11, 2002." CP at 276 (emphasis added). TD&H's passing reference to the 2002 e-mail, even if attributed to the County, is insufficient to constitute "use." *Concerned Ratepayers*, 138 Wn.2d at 960-61.

This case is much different from *Concerned Ratepayers*, wherein the plaintiffs requested technical plans for a type of generator that had been considered for use at a

---

[3] Mr. Eggleston also briefly refers to a portion of the contract that requires the consultant (TD&H) to keep documents for three years. However, that portion of the contract only pertains to "cost records and accounts." CP at 1046. It is not applicable

public power plant. Although the technical plans were owned and possessed by a subcontractor, there was evidence the public utility district employees had reviewed and evaluated the plans during meetings with the contractors. This substantive consideration, along with various references to the generator in other public documents, was sufficient to show the generator's technical plans had a nexus to the public utility district's activities in constructing its power plant and that the document constituted a public record, used by the public agency. 138 Wn.2d at 961-62. The lone fact proffered by Mr. Eggleston as to "use" of the 2002 e-mail pales in comparison to the facts set forth in *Concerned Ratepayers*.

Mr. Eggleston voices frustration with the fact that the 2002 e-mail has never been produced and thus we can never know for certain that it did not contain substantive information. We understand this concern. But the County had no duty to procure a document from a third party that did not meet the definition of a public record. Mr. Eggleston suggests the County is hiding something and speculates the 2002 e-mail contained substantive information, important to the Project.[4] Such speculation is

---

here.

[4] Mr. Eggleston claims that a conversation he had with Kevin Cannell suggests the 2002 e-mail contained substantive information. During that conversation, Mr. Cannell told Mr. Eggleston he had written a proposal in about 2001, documenting cultural resource concerns with the project location. However, Mr. Cannell did not indicate his "proposal" took the form of a 2002 e-mail. Given that Mr. Cannell's scope of work,

12

insufficient to raise an issue of fact necessary to overcome summary judgment. *See*

*Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 626-27, 818 P.2d 1056

(1991); *Wash. Fed. Nat'l Ass'n v. Azure Chelan LLC*, 195 Wn. App. 644, 662, 382 P.3d

20 (2016).

Because the 2002 e-mail was not a public record, we need not address whether Mr.

Eggleston's requests for the e-mail fell outside the statute of limitation.

*The April and July plans*

As it did with the 2002 e-mail, the County claims the April and July plans are not

public documents. However, the plain terms of the contract provide otherwise. The April

and July plans were created and used by TD&H during its substantive work on the

County's Project. As such, both documents were captured by the contract's clause on

ownership and both fall squarely in the definition of public records.

The County asserts that even if the April and July plans are public records, they are

exempt from production. As the agency claiming an exemption, the County bears the

burden of proving an exemption applies. *See Am. Civil Liberties Union of Wash. v. City

of Seattle*, 121 Wn. App. 544, 89 P.3d 295 (2004). The only exemption that has been

---

which was attached to the 2002 e-mail and which was disclosed as a public record,
identified cultural resource concerns for the site, Mr. Cannell's conversation with Mr.
Eggleston does not suggest the existence of any undisclosed documents.

13

preserved for our review is the preliminary draft exemption, RCW 42.56.280.[5] We

review the applicability of this exemption de novo. *Id.* at 549.

The purpose of the preliminary draft exemption, is to protect "the give-and-take of

deliberations that are necessary to formulate agency policy." *Id.* This purpose "severely

limits [the exemption's] scope." *Hearst Corp. v.* Hoppe, 90 Wn.2d 123, 133, 520 P.2d

246 (1978). "[O]nly those portions of documents actually reflecting policy

recommendations and opinions may be withheld." *Id.* Factual data is not included.

"Unless disclosure reveals and exposes the deliberative process, as opposed to the facts

upon which a decision is based, the exemption cannot apply." *Id.*

In *Progressive Animal Welfare Society v. University of Wash.*, 125 Wn.2d 243, 844

P.2d 592 (1994) (*PAWS*), the Supreme Court analyzed the scope of the preliminary draft

exemption in circumstances similar to here. At issue in *PAWS* was whether the

University of Washington's unfunded grant proposals, submitted to the National Institute

of Health (NIH), fell under the scope of the PRA. The Court held that the unfunded grant

proposals did not reveal the kind of "deliberative or policy-making process contemplated

by the exemption." *Id.* at 257. Thus the unfunded proposals themselves did not qualify

---

[5] Two additional exemptions have been raised for the first time on appeal and are not preserved. *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 394-97, 314 P.3d 1093 (2013).

for exemption. However, the NIH's written comments on the unfunded proposals,

referred to as "pink sheets," were quintessentially deliberative and, thus, qualified for

exemption. *Id.*

The preliminary project plans, created by TD&H in April and July 2012, are akin

to the unfunded grant proposals discussed in *PAWS*. They set forth the project ideas,

some of which did not ultimately come to fruition. Nowhere on the preliminary plans is

there any commentary. The testimony at trial was that, during negotiations over the

Project, such commentary would be provided subsequent to review of a particular

preliminary plan. While one might be able to guess at what the evaluations of the

preliminary plans were by comparing the preliminary plans with the final project plan,

this kind of indirect disclosure is not what is contemplated by the statute. Indeed, the

same could be said for the university's unfunded grant proposals. The preliminary plans

did not clearly express any opinions or recommendations regarding the Project's final

plan. Accordingly, the April and July plans were not exempt from disclosure under the

preliminary draft exception.[6]

*Calculation of penalties, attorney fees and costs*

Calculating a PRA penalty is a two-step process: "(1) determine the amount of

---

[6] Even if the April and July plans contained some commentary, they still qualified
as public records and should have been disclosed in redacted form.

15

days the party was denied access and (2) determine the appropriate per day penalty" up to

$100. *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 438, 98 P.3d 463

(2004) (*Yousoufian* I). Both steps are contested here.

*Penalty period*

Both parties complain the trial court improperly calculated the penalty period for

the County's PRA violations. Mr. Eggleston claims the trial court abused its discretion by

treating his multiple requests for the April and July plans as followups to two requests, as

opposed to multiple, separate requests. The County complains the trial court should have

shortened the penalty period assessed for the July Plans since Mr. Eggleston received a

copy of the plan at a pretrial deposition. Determining the number of days a public record

request was wrongfully denied or delayed involves a question of fact. *Zink v. City of

Mesa*, 162 Wn. App. 688, 706, 256 P.3d 384 (2011). "When, as here, the trial court heard

live testimony and judged the credibility of witnesses, we afford deference to its

determination of this fact." *Id.*

We disagree with Mr. Eggleston's claim that the trial court was required to treat

his various requests for the April and July plans as separate requests for purposes of PRA

penalties. The trial court had discretion to group together related requests in assessing

penalties. *Id.* at 711-12, 722. The facts presented at trial justified its decision to group

16

together Mr. Eggleston's requests for the April and July plans as two requests, rather than several independent requests. In his followup inquiries regarding the April and July plans (dated August 2, August 24, and September 2, 2012), Mr. Eggleston did not seek new information. Instead, he complained about the County's failure to respond to his prior requests. Mr. Eggleston did seek a withholding log in one of his followup inquiries. But this did not constitute a new request. A withholding log is not a separate document that is subject to a PRA request. It is a document that forms a part of an agency's response to a records request. RCW 42.56.210(3). Given the totality of the circumstances, the trial court had ample grounds for finding only two PRA violations.

The County argues the trial court should not have calculated the penalty period for the July Plans to run until the first date of trial. Instead, the County claims the penalty period should have ended on January 18, 2013, when Mr. Eggleston received the July Plans from an employee of TD&H at a pretrial deposition. Assuming an agency can comply with the PRA by delegating the task of records disclosure to a third party,[7] there are no facts in the record suggesting that happened. The record on appeal merely indicates an employee of TD&H provided Mr. Eggleston a copy of the July Plans in compliance with a subpoena duces tecum issued by Mr. Eggleston's attorney. Nothing

---

[7] The parties on appeal agree that TD&H does not qualify as a de facto public agency.

17

indicates the County facilitated access to the document. *Cf.* RCW 42.56.070 (duty to make records available falls on the agency). Based on this circumstance, the trial court correctly calculated the penalty period for the July Plans as extending through the first day of trial.

### *Daily penalty amount*

Both parties also complain the trial court improperly calculated the daily penalty amount for the County's PRA violations. Mr. Eggleston argues for an increase in the daily fee. The County claims it is excessive. A trial court's determination of daily penalties under the PRA is reviewed for abuse of discretion. *Yousoufian* II, 168 Wn.2d at 458. Discretion is abused if the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* Although the Supreme Court's *Yousoufian* II decision set forth a nonexclusive list of aggravating and mitigating factors relevant to the penalty analysis, trial courts retain "considerable discretion" to set PRA penalties. *Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus.*, 185 Wn.2d 270, 279, 372 P.3d 97 (2016).

The trial court did not commit any legal error in assessing penalties against the County. The court correctly identified the applicable nonexclusive aggravating and mitigating factors. It did not improperly focus on one factor to the exclusion of others.

18

*Sergent v. Seattle Police Dep't*, 179 Wn.2d 376, 398, 314 P.3d 1093 (2013). Nor did the court erroneously adopt a presumptive starting point when considering the statutory penalty range. *Yousoufian* II, 168 Wn.2d at 466.

The trial court also supported its legal analysis with tenable facts. In essence, the trial court found some of the factors favored the County (e.g., county officials relied in good faith on legal counsel and were legitimately concerned about project delays), others favored Mr. Eggleston (e.g., legal counsel incorrectly advised the County of the law), and some went both ways (some of the County's interactions with Mr. Eggleston were fully appropriate, others bordered on bad faith). The record amply supports this position. The trial court was not required to make detailed findings regarding the *Yousoufian* II factors. *See id.* at 470. We therefore decline to quibble with aspects of the trial court's ruling that could have been stated with greater clarity.

In the end, the ultimate penalty selected by the trial court was not outside the broad realm of reasonableness. *See id.* at 458-59 (manifestly unreasonable decision is one that no reasonable person would take). The $35.00 daily penalty was not particularly low. *Cf. id.* (reversing a $15.00 per day penalty as manifestly inadequate). It therefore reflects that at least some of the County's responses to Mr. Eggleston at least bordered on bad faith. But at the same time, the penalty amount appropriately takes into account the County's limited resources and the lack of any proven economic loss by Mr. Eggleston.

19

No. 34340-5-III
*Eggleston v. Asotin County*

Neither party has established a basis for altering the daily penalty amount.

### *Cost award*

Any person who prevails in a PRA action shall be awarded "all costs, including reasonable attorney fees." RCW 42.56.550(4). Here, the trial court awarded $2,736.67 for various court costs. But Mr. Eggleston claimed $4,261.67 in costs. He argues the trial court erred in not awarding all of his costs because the PRA does not permit any discretion in an award of costs, like it does for reasonable attorney fees. While the PRA does not define "all costs," this phrase has been interpreted to allow a party to "recover all *reasonable* costs incurred in litigating the dispute." *Am. Civil Liberties Union of Wash. v. Blaine Sch. Dist. No. 503*, 95 Wn. App. 106, 115-17, 975 P.2d 536 (1999) (emphasis added); *see also Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 828-30, 225 P.3d 280 (2009). While these cases indicate a liberal award of costs is preferred, the phrase reasonable costs implies some discretion on the part of the trial court to disallow costs that are unreasonable. Mr. Eggleston does not argue the trial court abused its discretion in not awarding any specific costs. He simply argues there was no room for discretion. He is incorrect. The trial court did not abuse its discretion in adjusting the cost award.

No. 34340-5-III
*Eggleston v. Asotin County*

## ATTORNEY FEES/APPELLATE COSTS

The attorney fee provision of the PRA, RCW 42.56.550(4), also applies to appellate costs. *PAWS*, 125 Wn.2d at 271. Because Mr. Eggleston has prevailed on his right to inspect the April and July plans, he is entitled to an award of fees and costs, limited to this aspect of his defense of the County's cross appeal. An award shall issue upon Mr. Eggleston's compliance with RAP 18.1(d).

## CONCLUSION

The judgment of the trial court is affirmed. Mr. Eggleston's request for appellate fees and costs is granted in part, as set forth in this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                            Lawrence-Berrey, J.

21