[Nos. 27596-5-III; 28112-4-III.   Division Three.   June 7, 2011.]

JEFF ZINK ET AL., *Appellants*, v. THE CITY OF MESA, *Respondent*.

*Ronald F. St. Hilaire* (of *Liebler Connor Berry & St. Hilaire*), for appellants.

*Leland B. Kerr* (of *Kerr Law Group*), for respondent.

*Daniel B. Heid* and *Steven L. Gross* on behalf of Washington State Association of Counties and Association of Washington Cities, amici curiae.

¶1 KULIK, C.J. — We review for the third time the continuing conflicts between the city of Mesa and Jeff and Donna Zink. Initially, the Zinks appealed the termination of their building permit. We held in their favor. Then the Zinks appealed the trial court's decision on Mesa's violations of the public disclosure act, chapter 42.17 RCW.[1] We again held in favor of the Zinks and remanded to the trial court for assessment of penalties and fees against Mesa.

¶2 The trial court set the penalties, costs, and attorney fees at $246,000. The Zinks appealed this judgment and Mesa cross appealed. During the appeal, the Supreme Court issued *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010) (*Yousoufian* 2010).

¶3 On appeal and cross appeal, the parties agree that the trial court used the wrong legal standard to set the daily penalty under the Public Records Act (PRA), chapter 42.56 RCW, citing *Yousoufian* 2010. The Zinks ask this court to apply the aggravating factors of *Yousoufian* 2010 and to impose additional penalties. Mesa, on the other hand, contends the matter should be remanded to the superior court and Mesa should be allowed to present supplemental evidence of mitigating factors.

---

[1] The provisions of chapter 42.17 RCW pertaining to public records (called the public disclosure act) were recodified in the Public Records Act (PRA), chapter 42.56 RCW, effective July 1, 2006. LAWS OF 2005, ch. 274, § 1. This opinion refers to the overall act as the PRA. We cite to the statutes in effect when the Zinks filed their action in April 2003.

¶4 *Yousoufian* 2010 provides guidance for assessing penalties under the PRA. It is appropriate for the trial court, not the appellate court, to again examine the daily penalties. Thus, we remand to the trial court for its determination of penalties utilizing the guidance provided in *Yousoufian* 2010. We specifically address the other issues raised by the parties in their appeal and cross appeal.

## FACTS

¶5 In August 2002, Mesa expired a building permit it had issued to the Zinks to repair and remodel their fire-damaged home. *Zink v. City of Mesa*, 140 Wn. App. 328, 333, 166 P.3d 738 (2007). Mesa cited neighbors' complaints about conditions around the home as the basis for its decision. *Id.*

¶6 The Zinks appealed to the Mesa Board of Appeals (Board) and began filing disclosure requests for public documents held by Mesa. *Id.* From early August 2002 to January 31, 2005, the Zinks filed between 68 to 172 record requests. *Id.* Most of these requests were to review or receive copies of records linked to the decision on their building permit, but some also related to the Zinks' perception that Mesa had treated other citizens unfairly. Ms. Zink was a former city council member and former mayor of Mesa. She later testified that her "watchdog" activities may have generated Mesa's alleged resistance to filling her public record requests. *Id.* at 333-34.

¶7 In March 2003, the Board affirmed Mesa's decision to expire the Zinks' building permit. *Zink v. City of Mesa*, 137 Wn. App. 271, 274, 152 P.3d 1044 (2007). The Zinks filed a PRA action against Mesa in April 2003.[2] They alleged that Mesa wrongfully denied, delayed, or limited time to view many of their requests for review of and copies of public

---

[2] Also in April 2003, the Zinks filed a Land Use Petition Act (LUPA), chapter 36.70C RCW, claim against Mesa for review of the Board's decision and additionally alleging Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, violations. *Zink*, 137 Wn. App. at 273. In May 2005, the parties agreed to resolve the LUPA and OPMA claims, with Mesa stipulating that it improperly terminated the building permit and improperly conducted a November 2002 meeting. *Id.*

records. Additionally, they alleged that Mesa charged them excessive amounts for copies. They requested a court order compelling Mesa to allow them to view the wrongfully withheld documents, to provide copies at the cost allowed by statute, to award a penalty of $100 for each day the documents were withheld, and for reasonable attorney fees and costs.

¶8 On February 27, 2004, the Zinks filed a motion for an order to show cause why the trial court should not enter findings granting them the relief requested in their complaint. *Zink*, 140 Wn. App. at 334. Specifically, the Zinks asserted that Mesa had violated the PRA by failing to respond to the Zinks' requests within five days, failing to provide the records within the time Mesa stated that it would, unreasonably delaying and wrongfully denying record requests, wrongfully redacting portions of records, failing to specifically state the bases for denials of some requests, charging excessive amounts for copies, and limiting the time in which the Zinks could view some public records to one hour per day. *Id.*

¶9 At the hearing on the show cause motion, the trial court heard testimony from the Zinks, Mr. Zink's sister, Mesa City Clerk Teresa Standridge, and the assistant city clerk. *Id.* In June 2005, the court entered findings, conclusions, and an order denying the Zinks' motion, generally finding that Mesa "more than substantially complied" with the Zinks' "overly excessive" public record requests. Clerk's Papers (CP) at 313-14. In specific findings, the court stated that restricting the Zinks' viewing of public records to one hour per day was "more than reasonable given the circumstances"; no complaint had been filed against the Zinks' home, although there was a memorandum of complaints that was not a public record; and the Zinks were never charged more than $.15 per copy. CP at 314. The trial court concluded that the Zinks' public record requests amounted to unlawful harassment, the Zinks did not receive disparate treatment, and it was a "practical impossibility" for Mesa to

strictly comply with the Zinks' public record requests due to the number of requests and limited manpower. CP at 314-15.

¶10 The Zinks appealed the trial court's decision to this court in July 2005. We reversed, holding that "administrative inconvenience or difficulty does not excuse strict compliance" with the PRA. *Zink*, 140 Wn. App. at 337. We additionally found that Mesa's restriction of the Zinks' access to the public records amounted to disparate treatment in violation of former RCW 42.17.270 (1987), the Zinks did not unlawfully harass Mesa, and any written complaint against the Zinks' home is not exempt from disclosure. *Id.* at 343-45. The case was remanded to the superior court to impose statutory penalties on a "per-day, per-request basis, in an amount it determines to be appropriate in light of the relevant circumstances." *Id.* at 348 (citing *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 430-39, 98 P.3d 463 (2004) (*Yousoufian 2004*)). The trial court was also directed to determine the appropriate copy charges for the requests at issue. *Id.* at 345.

¶11 A hearing was held before the original trial judge on July 16 and 17, 2008. The court's findings, conclusions, and order entered on November 7, 2008, set the number of penalty days for 37 unlawfully denied, delayed, or limited public record requests (or combinations of requests) and set a per-day penalty for each violation. Mesa was ordered to pay the Zinks $167,930 in penalties, $5,700 in costs, and $72,309 in attorney fees, for a total judgment of about $245,940.

¶12 The Zinks appealed to this court and Mesa cross appealed (No. 27596-5-III). The Zinks later appealed the trial court's separate order entered after in camera review of documents Mesa claimed were exempt from disclosure due to attorney-client privilege (No. 28112-4-III). These appeals were consolidated for review. Before the matter had been set for oral argument, the Washington Supreme Court accepted review of *Yousoufian v. Office of Ron Sims*, 137 Wn. App. 69, 151 P.3d 243 (2007), *aff'd as modified*, 168 Wn.2d 444, 229 P.3d 735 (2010). Noting that the trial court had

based its per-day penalty awards on the standards outlined by the Court of Appeals in *Yousoufian*, Mesa requested a stay of this appeal, pending the issuance of the *Yousoufian* mandate. The commissioner of court granted the stay, which was lifted in May 2010 after the Supreme Court issued the mandate in *Yousoufian* 2010.

¶13 The Zinks contend the trial court erred in (1) calculating the number of penalty days, (2) using a starting point at the low end of the penalty range, (3) failing to require Mesa to specifically identify which exemption applied to which record, (4) deciding that all communication between Mesa and the city attorney is privileged, and (5) deciding that a tape of a meeting and draft copies of the minutes were sufficient to satisfy record requests.

¶14 On cross appeal, Mesa contends that (1) on remand, the trial court should limit the penalty period to 1,825 days and group certain requests together; (2) the Zinks are not entitled to penalties for those documents that were released before they filed their lawsuit or for Mesa's delay in producing copies of correspondence with the Zinks; and (3) the trial court erred in holding that Mesa was required to prepare minutes for a Board meeting.

## ANALYSIS

### I. Remand—*Yousoufian* 2010

¶15 "The PRA is a strongly-worded mandate for broad disclosure of public records." *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009). It requires each agency to make available all public records for public inspection and copying unless the records fall within specific exemptions. Former RCW 42.17.260(1) (1997). Any person who prevails against an agency in an action seeking the right to inspect or copy public records or the right to receive a response to a public record request in a timely manner is entitled to an award of not less than $5 and not more than $100 for each day he or she was denied the right to inspect or copy the record.

Former RCW 42.17.340(4) (1992).[3] Generally, challenges to agency actions under the PRA are reviewed de novo. *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 145, 240 P.3d 1149 (2010). But the trial court's imposition of the per-day penalty for PRA violations is reviewed for an abuse of discretion. *Yousoufian* 2004, 152 Wn.2d at 430-31.

¶16 When determining the amount of a PRA penalty, the existence or absence of an agency's bad faith is the principal factor considered by the trial court. *Yousoufian* 2010, 168 Wn.2d at 460 (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 37-38, 929 P.2d 389 (1997)). Generally speaking, the penalty is increased based on an agency's culpability. *Id.* The Court of Appeals in *Yousoufian*, struggling to provide the trial courts with guidance in locating an agency's conduct within the PRA penalty range, adopted the four degrees of culpability used in the civil context: negligence, gross negligence, wanton misconduct, and willful misconduct. *Yousoufian*, 137 Wn. App. at 79-80. The trial court here, on remand, applied the four-tier culpability range and characterized each violation accordingly.

¶17 In *Yousoufian* 2010, however, the Washington Supreme Court rejected the four-tier culpability range as inadequate "to the complexity of PRA penalty analysis." *Yousoufian* 2010, 168 Wn.2d at 463. To help trial courts determine whether a particular per-day penalty is proportionate to the agency's misconduct, *Yousoufian* 2010 identified seven mitigating factors and nine aggravating factors that may serve to decrease or increase the penalty. *Id.* at 467-68. These factors are nonexclusive, "may not apply equally or at all in every case," and "should not infringe upon the considerable discretion of trial courts to determine PRA penalties." *Id.* at 468.

¶18 Mitigating factors that may decrease an agency's culpability include:

(1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3)

---

[3] We note Laws of 2011, ch. 273, § 1 (effective July 22, 2011), amending RCW 42.56.550(4), eliminates the minimum penalty of $5 per day.

the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

*Id.* at 467 (footnotes omitted).

¶19 Aggravating factors include:

(1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Id.* at 467-68 (footnotes omitted).

¶20 The court emphasized that the "factors may overlap, are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations." *Id.* at 468.

■ ¶21 Originally, the Supreme Court adopted mitigating and aggravating factors and remanded the matter to the trial court for recalculation of the penalty. *Yousoufian v. Office of Ron Sims*, 165 Wn.2d 439, 458-59, 462, 200 P.3d 232 (2009), *modified on recons.*, 168 Wn.2d 444. The mandate was then recalled, however, and the Supreme Court decided to apply amended factors to the unchallenged findings of fact in the record. *Yousoufian* 2010, 168 Wn.2d at 450, 467-68. As the court noted, the usual procedure is to remand for the trial court's exercise of discretion in impos-

ing the appropriate penalty. *Id.* at 468. But due to the "unique circumstances and procedural history of this case," the court decided to set the daily penalty amount "in order to bring this dispute to a close." *Id.* Even so, however, the court emphasized that this decision is not "an invitation from this court to trial courts to accede to having penalties set at the appellate court level," because it is "generally not the function of an appellate court to set the penalty." *Id.* at 469.

¶22 The Zinks urge this court to follow the lead in *Yousoufian* 2010 and to apply the *Yousoufian* factors to the record already established in this case. Mesa requests a remand to the trial court so that it can argue—with additional evidence—that the mitigating factors support lower penalties for various violations.

¶23 We agree that remand is appropriate. In *Yousoufian* 2010, the findings of fact were unchallenged, the requester made only two requests involving multiple documents, and the grouping of the documents into 10 categories (based on subject matter and time of release) for 10 separate penalties was not challenged. *Id.* at 450-51, 456; *see Yousoufian v. Office of King County Exec.*, 114 Wn. App. 836, 840-45, 849, 60 P.3d 667 (2003), *aff'd in part, rev'd in part*, 152 Wn.2d 421; *Yousoufian* 2004, 152 Wn.2d at 426-27, 436 n.9. Accordingly, the *Yousoufian* 2010 court, compelled by the "unique circumstances and procedural history" of the case, applied the 16 factors and imposed an "appropriate penalty" of $45 per day for each grouping. *Yousoufian* 2010, 168 Wn.2d at 468-69.

¶24 Here, on the other hand, the findings of fact are strenuously challenged by both parties, the Zinks made from 68 to 172 record requests (many of them overlapping), and the trial court awarded penalties ranging from $5 to $100 per day for 31 separate violations, based on the now-rejected, four-tier culpability range. Due to the complexity and number of violations in this case, the trial court is better suited to exercise its discretion and to consider

the appropriate penalties using the guidance provided in *Yousoufian* 2010.

¶25 Mesa contends the trial court's findings establishing the number of penalty days must also be vacated and remanded. But the holding in *Yousoufian* 2010 did not affect the way penalty days are calculated. The number of days subject to the PRA penalty was not in dispute in *Yousoufian* 2010. *Yousoufian* 2010, 168 Wn.2d at 458 n.5. Moreover, determination of the number of penalty days is a question of fact. *Yousoufian* 2004, 152 Wn.2d at 439. Nothing in *Yousoufian* 2010 compels opening up the calculation of penalty days to new evidence or argument on remand. In fact, *Yousoufian* 2004 emphasized that the PRA unambiguously requires a penalty for each day the requester was denied the right to inspect or copy a public record. *Id.* at 437; *see* former RCW 42.17.340(4).

¶26 On remand, the trial court may—in the exercise of its discretion—decide to reopen the evidence for consideration of additional facts related to the *Yousoufian* factors and the penalties proportionate to Mesa's misconduct. *Yousoufian* 2010, 168 Wn.2d at 466-68; *Yousoufian* 2004, 152 Wn.2d at 430-31.

¶27 The penalty amount for each violation day is vacated and remanded to the trial court for consideration of the *Yousoufian* 2010 factors.

II. Calculation of the Number of Penalty Days

¶28 The Zinks and Mesa challenge many of the trial court's calculations of the number of penalty days. As stated above, the determination of the number of days a public record request was wrongfully denied or delayed is a question of fact. *Yousoufian* 2004, 152 Wn.2d at 439. When, as here, the trial court heard live testimony and judged the credibility of witnesses, we afford deference to its determination of this fact. *Zink*, 140 Wn. App. at 336. We review the trial court's findings of fact for substantial evidence in the record to support them. *Id.* at 337. When the question is whether the trial court was authorized to reduce the penalty

period, review is de novo. *Yousoufian* 2004, 152 Wn.2d at 436. We then address the following contentions raised by the Zinks.

¶29 **A.** The Zinks first contend the trial court improperly excluded the number of penalty days for PRA violations from the time of the trial court's first decision in favor of Mesa until that decision was overturned on appeal in *Zink*, 140 Wn. App. 328. Mesa concedes in its response that the trial court improperly excluded these days in the total penalties. Accordingly, by stipulation of the parties, the trial court should include the number of days of public record violations that occurred during the period between the trial court's first judgment for Mesa and this court's reversal of that judgment in *Zink*, 140 Wn. App. at 333.

¶30 **B.** The Zinks next contend the trial court erred in holding that the penalty period for the records that still had not been produced at the time of the proceedings ended the day the judgment was entered. In the trial court's November 2008 order, Mesa was ordered to produce within seven days of the entry of the order all public records that had not yet been produced, including unredacted copies of the code violation letters, resignation letters, telephone fax logs, residential address files, complaints, replies to complaints, and any other originally redacted documents at issue; all correspondence between Mesa and Municipal Research and Services Center of Washington (an organization that gives legal advice to municipalities); a time card; and minutes from the March 5, 2003 Board meeting. After in camera review of the correspondence between the city attorney and Mesa, the trial court on April 20, 2009, further ordered Mesa to disclose all of the nonexempt correspondence. According to the Zinks, the per-day penalty established by the trial court for these violations at judgment should continue to accumulate after judgment until the records are actually produced.

¶31 Generally, a court order is enforced according to the plain meaning of its terms, read in light of the issues and purposes surrounding its entry. *R/L Assocs. v. City of*

*Seattle*, 113 Wn.2d 402, 410, 780 P.2d 838 (1989). Disobedience of a lawful order and unlawful refusal to produce a document or record constitutes contempt. *Id.*; RCW 7.21-.010(1)(b), (d). Anyone aggrieved by the contempt of court may initiate a proceeding to impose a remedial sanction. RCW 7.21.030(1). If the court finds that the person has failed or refused to perform an act that is still within the person's power to perform, the court may find the person in contempt and impose a sanction of up to $2,000 for each day the contempt continues or any other sanction necessary to ensure compliance, and may also order the person to pay a party for any losses incurred, including attorney fees. RCW 7.21.030(2)(b)-(d), (3).

¶32  If Mesa has not complied with the trial court's order to produce the public records, the Zinks may again bring an action under the PRA or a remedial contempt action under RCW 7.21.030. To recover for untimely production of public records that have been produced, the Zinks must again resort to the PRA.

¶33  C. The Zinks contend the trial court erred in automatically deducting five business days (seven actual days, including one weekend) from the date of the Zinks' requests when setting the per-day penalty period. At trial, the trial court initially agreed with the Zinks that it made little sense to allow Mesa five business days to produce a record that is readily available, such as the official packet for the city council meeting requested for review four days before the meeting. After further consideration, however, the trial court reversed itself and ruled that strict compliance with the PRA required the court to recognize that an agency has five business days to respond to a public record request.

¶34  The PRA unequivocally commands an agency to respond promptly to a public record request. *Yousoufian* 2010, 168 Wn.2d at 465; *see* former RCW 42.17.270; former RCW 42.17.320 (1995). Specifically, within five business days of receiving a public record request, an agency must respond by either (1) providing the record, (2) acknowledging that the agency has received the request

and providing a reasonable estimate of the time required to respond, or (3) denying the request. Former RCW 42.17.320. The agency may have additional time to respond if it needs to (1) clarify the intent of the request, (2) locate and assemble the information, (3) notify third parties or agencies affected by the request, or (4) determine whether the requested information is exempt. Former RCW 42.17.320.

¶35 Although the Zinks concede that former RCW 42.17.320 allows an agency up to five days to respond to a public record request, they contend the PRA's insistence upon a prompt response requires the agency to respond in less than five days if possible. In interpreting the statute, our duty is to give effect to the legislature's intent. *Yousoufian* 2004, 152 Wn.2d at 437. We look at the PRA in its entirety, construing it to enforce its overall purpose. *Rental Hous. Ass'n*, 165 Wn.2d at 536. But when the meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of what the legislature intended. *Id.*

¶36 Former RCW 42.17.320 requires that responses to requests for public records must be made promptly. The second sentence states that the response must be within five days of receiving the public record request. Former RCW 42.17.320. The plain terms of the statute indicate that a response more than five days after a public record request, unless reasonably delayed under former RCW 42.17.320, is a violation of the PRA. An award of costs, including attorney fees, is mandatory for the failure to respond to a public record request "within a reasonable amount of time." Former RCW 42.17.340(4). Each day a requester is denied the right to inspect or copy the public record is subject to a per-day penalty. *Id.* And the agency has five days to decide whether to deny the request, produce the record, or otherwise respond to the request. Former RCW 42.17.320. Accordingly, no penalty is triggered unless the request is improperly denied within that five-day period. Under the plain terms of the statute, the five

days allowed for agency action should not be included in the per-day penalty if the requested public record is not produced. Except as noted, Mesa usually responded within five business days to the Zinks' public record requests, by either providing the record, denying the request, or giving an estimate of the time required to respond. Former RCW 42.17.320.

¶37 When time is of the essence, as when the Zinks requested the city council packet four days before the city council meeting, the trial court may consider the fact that the agency probably could have responded earlier than five days later when it decides upon the amount of any per-day penalty imposed. *See Yousoufian* 2010, 168 Wn.2d at 467 (one aggravating factor is the "delayed response by the agency, especially in circumstances making time of the essence").

¶38 Mesa concedes that the trial court erred in excluding five business days from three requests that were denied before five business days had elapsed. These requests include (1) memos and notes requested in October 2002 and April 2003, (2) the tape recording of the June 14 meeting, and (3) the draft dog ordinance. The penalty days calculated for the wrongful withholding of these materials should be adjusted accordingly on remand.

¶39 D. On August 29, 2002, Ms. Zink verbally asked to review the building permit file related to the Zinks' property. In review of the file on that date, Ms. Zink did not see a copy of the complaint that apparently was filed against the property earlier in the month. On September 30, 2002, Ms. Zink specifically requested access to all public records regarding the property. The complaint was finally produced on November 27, 2002. The Zinks assert the complaint should have been in the building permit file on August 29, 2002. The trial court, however, found that Mesa "silently" withheld the complaint against the Zinks' property only after the September specific request, rather than from August 29, 2002 to November 27, 2002. CP at 111.

¶40 "Silent withholding," the failure to reveal that some records have been withheld in their entirety, is a violation of the PRA because it gives requesters the misleading impression that all documents relevant to the request have been disclosed. *Rental Hous. Ass'n*, 165 Wn.2d at 537-38 (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 270-71, 884 P.2d 592 (1994)). If Mesa had notice when Ms. Zink asked to review the building permit file that she was looking for the property complaint, and if the complaint should have been in the file, then Mesa was obligated to disclose that the complaint was not in the file. *Id.* The questions then are whether Mesa received adequate notice and whether the complaint should have been in the file.

¶41 The prompt response requirement of the PRA does not apply until a specific request for identifiable public records has been made. *Beal v. City of Seattle*, 150 Wn. App. 865, 872, 209 P.3d 872 (2009). Although requests for public records need not be in writing, they must be specific enough for the government employee to locate the requested record. *Id.* Ms. Zink did not provide sufficient evidence that the complaint against the property should have been in the building permit file by August 29, 2002, and her oral request for that file was insufficient to alert the city clerk that she sought that complaint. The evidence supports the trial court's finding that Ms. Zink's September 30, 2002 request to view all of the public records regarding the Zinks' property was the first request that should have produced the complaint. Consequently, the trial court did not err in finding that "silently withholding" the complaint after the September request was a violation of the PRA.

¶42 E. The Zinks next contend the trial court erred in treating as one request the audio tape, minutes, and rules and regulations adopted in a November 13, 2002 meeting of the Board and requested by the Zinks on November 24, 2002, subject to one per-day penalty. A trial court has discretion not to impose penalties for each wrongfully withheld document. *Sanders v. State*, 169 Wn.2d 827,

864, 240 P.3d 120 (2010). As stated in *Yousoufian* 2004, 152 Wn.2d at 435, the PRA's purpose is better served by increasing the penalty based upon the agency's culpability rather than by basing the penalty on the size of the record request. The trial court properly exercised its discretion here in grouping the November 13, 2002 Board meeting documents based on the date of the Zinks' request and assigning the highest per-day penalty for a willful violation of the PRA.

¶43 F. The Zinks contend the trial court erred in finding that Mesa's initial 30-day delay in releasing 21 requested code violation letters was reasonable. They also assert the court erred in finding that unredacted code violation letters could not have been produced before February 14, 2003. After the Zinks requested the code violation letters, Mesa responded with a letter stating that it needed 30 days to locate and assemble them.

¶44 Under former RCW 42.17.320, an agency may respond to a public record request by stating that additional time (beyond the initial five days) is needed to locate and assemble the information requested or to determine if any of it is exempt. The agency carries the burden of proving that the estimate it provided was reasonable. Former RCW 42.17.340(2). The Zinks contend Mesa did not show that 30 days was a reasonable delay for release of these letters. At trial, the court found that because Mesa had to review all 21 requests manually, without cross-referencing, the 30-day delay was reasonable. Accordingly, the penalty for failure to produce the letters was limited to the noncompliance period after the initial 30 days. Substantial evidence supports the trial court's findings.

¶45 The record also supports the trial court's finding that unredacted letters should have been produced on February 14, 2003. Ms. Zink testified that the city clerk produced about one-half of the letters in mid-December, but Ms. Zink left them at the clerk's office and later called to say that she wanted to see all the code violation letters together. When Ms. Zink showed up to view the letters in

late January, she received a letter asking for clarification of the request.

¶46 Ms. Zink subsequently wrote another public record request clarifying the code violation letters requested, and she was allowed to view them in unredacted form on February 14, 2003. The copies she received, however, were wrongfully redacted. The trial court's finding that unredacted copies of the code violation letters should have been produced on February 14, 2003, after Ms. Zink's clarification of the request, is supported by the evidence. *See* former RCW 42.17.320 (an agency may take additional time to respond when needed to clarify the intent of the request).

¶47 G. Next, the Zinks contend the trial court improperly combined the January 28, 2003 request for all correspondence between the city attorney and Mesa and between Municipal Research and Mesa with the March 19, 2003 request for all correspondence between these entities. The Zinks contend these were two separate requests involving different documents that the trial court ordered to be released on separate dates. Although the trial court ordered release of the Municipal Research documents within seven days after judgment was entered, it reviewed the city attorney documents in camera to determine if an exemption applied and ordered nonexempt materials released months later.

¶48 At trial, the court treated the two requests—the second of which merely added the two subsequent months of communications to the first—as one continuous request for all communications between Mesa and its city attorney and between Mesa and Municipal Research. The trial court's exercise of discretion to combine these requests of essentially the same documents was reasonable and not error. *Sanders,* 169 Wn.2d at 864.

¶49 H. On February 24, 2003, the Zinks requested multiple documents, including a copy of board rules and regulations adopted in December 2002, telephone logs, and 18 residential files. Most of these materials were produced on

March 17, 2003, although some were in redacted form. The trial court reduced the number of penalty days calculated for each grouping of documents due to the time Mesa asserted it needed to locate and assemble all the requested documents.

¶50 The Zinks contend the trial court erred in finding that Mesa was justified in delaying the release of the Board rules and regulations for 21 days and another 7 days after that. Although the trial court agreed that a requester should not have to wait beyond 5 business days to get a copy of an ordinance, it noted that the request was included with multiple other requests and that Mesa's request for more time to locate and assemble the rules and regulations was reasonable. The record supports the trial court's findings. Due to the number of records requested by the Zinks on February 24, 2003, the record also supports the trial court's findings that unredacted copies of the telephone logs and the 18 residential files could not have been produced before March 17, 2003.

¶51 I. The Zinks contend the trial court erred in finding that 11 residential files requested on March 3, 2003, could not have been produced before March 24, 2003. Mesa responded on March 7, 2003, that it would allow Ms. Zink to review the files for one hour per day, starting on March 24, 2003, and then it provided Ms. Zink redacted copies of the files on that day. The trial court found that unredacted copies could have been produced on March 24, 2003. No objection to beginning the penalty period on March 24 was raised at trial; thus, the issue is waived on appeal. RAP 2.5(a); *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441, 191 P.3d 879 (2008).

¶52 J. The Zinks contend the trial court erred in finding that Mesa reasonably delayed release of the Cade Scott reply to the Zinks' complaint from April 4, 2003 to May 30, 2003, and that the unredacted copy could not have been produced before May 30, 2003. According to the record, Ms. Zink left the city clerk a telephone message on April 4, 2003, requesting the Cade Scott reply. Mesa responded on April

10, 2003, that the Zinks must contact the city attorney before release. Ms. Zink made a written request for the Cade Scott reply on April 14, 2003. She received a response from the city attorney on April 22, 2003, stating that due to the high volume of requests, the documents would be available on May 31, 2003. A redacted copy of the record was provided on May 30, 2003.

¶53 The trial court found that Mesa violated the PRA by limiting Ms. Zink's review of the records to one hour per day, directing her to make all requests through the city attorney, and producing only a redacted copy on May 30. Yet, the trial court found that the delay was reasonable due to "a significant regular sustained volume of requests" until May 30, when an unredacted copy of the Cade Scott reply should have been produced. CP at 127. This finding is not supported by the record. In effect, Mesa first denied Ms. Zink's request on April 10, 2003, when it refused to produce the record unless Ms. Zink contacted the city attorney. This admittedly wrongful denial predated the subsequent written request to the city attorney and the delay. Accordingly, the Zinks are entitled to a per-day penalty for every day after April 10, 2003, that they were denied the right to the unredacted Cade Scott reply. Former RCW 42.17.340(4).

¶54 K. The Zinks next contend the trial court erred in finding that the March 2003 request for the file of complaints, replies, requests, and denials regarding Ms. Zink was confusing and in finding that Mesa reasonably did not respond to that request. On March 3, 2003, Ms. Zink asked the city clerk for two ordinances, a resolution, an agenda, planning commission meeting notices with agendas from December 2001 through February 2003, and "file of requests [and] replies delays & denials." Ex. 30. On March 3, the city clerk produced a file containing some of the requested materials. Then, on March 10, 2003, Ms. Zink requested in writing "to review and/or copy all complaint letters, requests for information, and all written correspondence which the City of Mesa has received from Jeff or Donna Zink from January 1, 2001 to March 10, 2003." Ex. 31. The next day,

Ms. Zink asked the city clerk if she had misunderstood the request for these files, and the clerk stated that she had. The clerk explained that it would take a while to find all the letters.

¶55 On March 13, 2003, Ms. Zink was informed that Mesa needed an additional 14 days to determine if the materials were exempt. She received a letter from the city attorney dated March 14, 2003, stating that the records would be available on April 18, 2003, due to the high volume of requests. Ms. Zink was allowed to view the file for only one hour on April 4, 2003. And Mesa produced copies of all the materials on May 30, 2003.

¶56 The trial court found that the March 3 request was confusing. This finding is supported by Ms. Zink's own admission in Exhibit 32. The record also supports the trial court's finding that Mesa responded within five business days to the March 10 written request by giving reasonable estimates of the time necessary to comply. A one-day penalty of $100 was imposed for the one-hour viewing limitation on April 4 and a penalty of $25 per day was imposed for disparate treatment from April 18 (the date the records could reasonably be produced) to May 30. The trial court's findings are supported by substantial evidence.

¶57 L. The Zinks contend the trial court erred in finding that Mesa reasonably delayed production of the Board's draft minutes for a March 5, 2003 meeting until April 11, 2003, due to a high volume of requests. They also assert that the court erred in finding that production of the audiotape of the meeting in lieu of the draft minutes satisfied the PRA. On cross appeal, Mesa contends the trial court erred in ordering Mesa to prepare minutes for the March 5, 2003 Board meeting. Mesa asserts that failure to respond to a request for a nonexistent record is not a PRA violation. *Sperr v. City of Spokane*, 123 Wn. App. 132, 136-37, 96 P.3d 1012 (2004); *see also City of Federal Way v. Koenig*, 167 Wn.2d 341, 348 n.3, 217 P.3d 1172 (2009).

¶58 The record shows that Ms. Zink asked for and received an audiotape of the March 5 Board meeting. On March 7, she requested the minutes of the March 5 Board

meeting "as soon as possible" so she could proceed with her appeal of the hearing. Ex. 111. The record also shows that the minutes were never transcribed.[4] According to the findings, Mesa delayed the response to April 11, 2003, due to the high volume of requests. But in lieu of a fine for failure to produce the minutes on April 11, the trial court ordered Mesa to prepare the minutes within seven days of the judgment. Somewhat inconsistently, the court also found that the tape of the meeting Ms. Zink received actually more than satisfied the PRA request because "it included everything at the meeting and not just the minutes." CP at 136.

¶59 First, the trial court's finding that the original delay to April 11, 2003, was reasonable due to the high volume of requests appears supportable considering the number of requests the Zinks had already filed (including multiple requests for the minutes from earlier meetings) and considering the fact that the minutes did not yet exist. The Zinks' second contention—that the tape of the meeting was insufficient to satisfy a request for the draft minutes—is more problematic. As the trial court recognized, Mesa was statutorily required to promptly record the minutes of its legislative meetings and to keep such records open to the public. See RCW 35A.39.010; RCW 42.32.030. The court also concluded that Mesa's abrogation of its statutory obligation to keep the minutes was no justification or exemption for violating the PRA. Yet, the court found that the audiotape "actually satisfied the statute." CP at 136.

¶60 The Zinks requested the minutes of a Board meeting—a public record. See former RCW 42.17.260. A "public record" is defined in the PRA as "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local

---

[4] According to the city attorney, the Board may not have met again after the March 5, 2003 meeting.

agency regardless of physical form or characteristics." Former RCW 42.17.020(36) (2002). A "writing" is further defined as any "means of recording any form of communication," including sound recordings. Former RCW 42.17-.020(42). Although the audiotape of the board meeting constituted a "writing" that was a public record, provision of the audiotape did not comply with the Zinks' request for the minutes of the meeting. Former RCW 42.17.020(36), (42).

¶61 The key question then is whether Mesa's failure to comply with the independent statutory directive to promptly record the minutes excuses it from complying with a PRA request for those minutes. Generally, an agency has no duty under the PRA to create or produce a record that does not exist at the time of a public record request. *Sperr*, 123 Wn. App. at 136-37; *Smith v. Okanogan County*, 100 Wn. App. 7, 13-14, 994 P.2d 857 (2000). Thus, Mesa did not violate the PRA because it did not actually deny the Zinks an opportunity to review or copy an existing public record. *Sperr*, 123 Wn. App. at 136-37. Mesa admittedly violated separate statutes requiring it to prepare draft minutes of the Board meetings for public review. RCW 35A.39.010; RCW 42.32-.030. But the PRA does not state that an agency's violation of independent statutory duties to prepare records is also a violation of the PRA.

¶62 Mesa asserts that the Zinks' remedy was to file a mandamus action if they believed Mesa had failed to comply with a statutory duty. But the trial court, acting sua sponte, ordered Mesa to comply with the independent statutory duty to draft the minutes of the March 5, 2003 Board meeting.[5] The court also ordered Mesa to provide those minutes to the Zinks within a specific time period. Until the minutes have been drafted, Mesa has not violated a duty under the PRA. *Sperr*, 123 Wn. App. at 136-37. The trial court did not err in refusing to assess a per-day penalty

---

[5] Mesa contends the trial court found that the PRA required it to prepare the nonexistent minutes. The trial court did not tie the drafting of the March 5, 2003 Board minutes to the PRA, however, but to Mesa's duties otherwise required by state statute.

for Mesa's failure to produce the March 5, 2003 Board minutes.

¶63 **M.** The Zinks also contend the trial court erred in finding that Mesa reasonably delayed release of the February 13, 2003 and March 4, 2003 city council meeting minutes and Board resignation letters of members Rick Hopkins and Devi Tate in order to determine whether any of the requested documents were exempt and due to the high volume of requests.

¶64 On March 10, 2003, Ms. Zink submitted a written request for 15 specific documents and the vouchers and bills that would be presented to the city council on March 13, 2003. Included in the documents requested were the minutes of seven Board meetings and two city council meetings as well as signed resignation letters from various Board and city council members. Mesa first delayed its response to this entire request to March 27, 2003, while it tried to decide whether any of the documents were exempt. It then further delayed a response to April 11, 2003, due to the high volume of requests. The trial court found that the estimated time to respond to these multiple requests was reasonable because all the requests came at once and were treated together. The record supports these findings of reasonable delay and that the city council minutes and resignation letters could have been produced on April 11, 2003. Former RCW 42.17.320, .340(2).

¶65 **N.** The Zinks contend the trial court erred in its treatment of several requests for local ordinances and resolutions. Because ordinances and resolutions must be indexed and available to the public for inspection at reasonable times (RCW 35A.12.150), the Zinks assert that Mesa had no justification for delaying release of these legislative documents:

¶66 *1. Ordinances and resolutions requested on December 11, 2002.* The trial court found that Mesa's delay of 30 days in order to locate and assemble the documents was reasonable. The Zinks note that Mesa knew some of the

documents did not exist yet told the Zinks it needed 30 days to locate them.

¶67 On December 11, 2002, the Zinks requested copies of five records, including (1) ordinances and resolutions setting out the procedures established by the city council for publication of ordinances, public notification of upcoming hearings, and the preliminary agenda; (2) the city council resolution designating an official newspaper; and (3) the ordinance setting out the days and hours Mesa is open for transaction of business. Most of the ordinances and resolutions comprising these three records did not exist. Later, they were provided to the Zinks one day after they were adopted (two were adopted on January 23, 2003, and one was adopted on February 13, 2003). Under these circumstances, the trial court's finding that Mesa reasonably delayed its response to the December 11 request for 30 days to locate and assemble these documents is superfluous. As discussed above, Mesa had no duty under the PRA to produce records that did not exist. *Sperr*, 123 Wn. App. at 137. Because Mesa produced this resolution and these ordinances the day after they were enacted, it did not violate the PRA.

¶68 *2. Ordinance 01-05, requested December 11, 2002.* The trial court found that Mesa was justified in withholding this ordinance from December 11, 2002, until January 16, 2003, because the request was included with other requests that did not exist at the time and due to the high volume of requests in general. This ordinance was adopted in 2001 and was one of the ordinances responsive to the Zinks' request for the city council procedures for publication of ordinances, notification of upcoming hearings, and the preliminary agenda discussed above. The trial court found that numerous requests had been made before December 11, 2002, that were still outstanding. Additionally, Ordinance 01-05 was included with three other ordinances and resolutions that did not yet exist. The trial court found that it was reasonable for Mesa to attempt to provide all of these legislative enactments at the same time because they were

requested together. The record supports the trial court's finding that Mesa reasonably estimated 30 days were needed to respond to the December 11, 2002 request. Former RCW 42.17.320, .340(2).

¶69 *3. Ordinance 02-01, requested February 24, 2003.* Copies of this ordinance and multiple other records were requested at the same time. On February 28, 2003, Mesa notified Ms. Zink that it would need 21 days to locate and assemble the documents. The trial court found that the delay was reasonable. Mr. Zink's sister testified she asked for a copy of Ordinance 02-01 on April 16, 2003, and received one immediately. The Zinks contend this proves that they received disparate treatment of their request for the same ordinance. The evidence shows, however, that this document was one of many requested. The Zinks contend the only reason the request of this ordinance was included with so many other documents was because Mesa required them to put their requests in writing. Due to the number of requests the Zinks made over a short span of time, asking them to submit written requests was a reasonable means for Mesa to keep track of the requests. The evidence supports the trial court's finding that Mesa reasonably estimated that it needed 21 days to produce the ordinance. Former RCW 42.17.320, .340(2).

¶70 *4. Ordinance 03-03, requested March 10, 2003.* The trial court found that Mesa was justified in delaying the release of this ordinance for 25 days due to the high volume of requests. As discussed above, this request was included in the March 10, 2003 request for more than 15 separate documents. Due to the high volume of requests, the trial court found that Mesa's estimate that the documents could be found and assembled by April 11, 2003, was reasonable. Ordinance 03-03 was provided to the Zinks on April 4, 2003. Here, as with the other public records requested on March 10, the record supports the trial court's finding that the delayed response was reasonable. *See* former RCW 42.17-.320, .340(2).

¶71 O. On cross appeal, Mesa contends the trial court should have grouped additional requests together. The PRA does not prevent the trial court from grouping multiple requests and treating them as one request. *See Yousoufian* 2004, 152 Wn.2d at 436 n.10. Mesa asserts that the trial court was uncertain whether it had the authority to group requests and suggests that on remand, the court should group responses that were based on common legal errors and that were made on the same day.

¶72 Although the trial court did mention that it was unsure whether it had authority to group requests, the court did, in fact, group requests when it assigned per-day penalties. The trial court properly exercised its discretion in grouping some requests based on their subject matter and in refusing to group others. *Sanders*, 169 Wn.2d at 864; *Yousoufian* 2004, 152 Wn.2d at 435-36.

¶73 Mesa's argument that wrongful denials of public record requests should be grouped based on a common legal error is not well taken. The rationale for an agency's violation of the PRA is not relevant to the number of days a requester is denied access to public records; the rationale relates to culpability and, thus, to the amount of the per-day penalty. *See Yousoufian* 2004, 152 Wn.2d at 435 (the purpose of the PRA is better served by increasing the penalty based on an agency's culpability than it is by basing the penalty on the size of the request).

### III. Consideration of the Entire Penalty Range

¶74 The Zinks next contend the penalties that the trial court imposed showed bias because the court used the lowest penalty—$5—as its starting point. They note that courts are required to "consider the entire penalty range established by the legislature." *Yousoufian* 2010, 168 Wn.2d at 466. The court should not have a presumptive starting point, not even the midpoint of the $5 to $100 range, but should use its discretion in determining where to begin. *Sanders*, 169 Wn.2d at 862; *Yousoufian* 2010, 168 Wn.2d at 466.

¶75 In this case, the trial court did not use a presumptive starting point but considered the entire penalty range and assigned penalties throughout the range. On remand, the court should exercise its discretion again in deciding each penalty amount, considering the guidance provided in *Yousoufian* 2010. *Yousoufian* 2010, 168 Wn.2d at 466-68.

IV. Mesa's Failure To Specifically Identify the Records Withheld and the Exemption that Applied to Each

¶76 On January 28, 2003, the Zinks requested all written correspondence Mesa had received from the city attorney and Municipal Research concerning requests for public records from January 1, 2002 to January 28, 2003. Mesa did not respond. These records were again requested on March 19, 2003, with the addition of any subsequent correspondence to that date. On March 24, 2003, Mesa informed the Zinks that it needed an additional 22 days to locate and assemble the information. Then, on April 3, 2003, Mesa stated that the requests for this correspondence were denied due to attorney-client privilege. The trial court found that the correspondence with Municipal Research was not privileged and should have been produced. After reviewing in camera the correspondence between the city attorney and Mesa, the trial court also found that some of those materials were not privileged and should have been produced. The Zinks now contend the trial court failed to address the fact that Mesa did not provide an exemption or privilege log as required by the PRA.

¶77 When an agency claims an exemption under the PRA, it must provide identifying information that includes a brief explanation of how the statutory exemption applies to each specific record. Former RCW 42.17.310(4) (2002); *Sanders*, 169 Wn.2d at 846; *Rental Hous. Ass'n*, 165 Wn.2d at 538. One way to provide this explanation is by use of a detailed privilege log that serves as a withholding index. *Rental Hous. Ass'n*, 165 Wn.2d at 539 (quoting WAC 44-14-04004(4)(b)(ii)). Mesa now concedes, in light of *Sanders*, that it violated the PRA when it failed to provide an

exemption log. On remand, the trial court may consider this violation when imposing the per-day penalty. *Sanders*, 169 Wn.2d at 847-48.

## V. Attorney-Mesa Privileged Communication

¶78 The Zinks next assign error to the trial court's decision exempting the correspondence between the city attorney and Mesa under the attorney-client privilege. This correspondence was accidentally released to the Zinks in the clerk's papers prepared for this court's review. Mesa contends the issue of what is subject to the attorney-client privilege is accordingly now moot. If some of the correspondence was wrongfully withheld when requested, however, the issue is relevant to the penalty imposed for per-day violations.

¶79 An agency must make available for public inspection and copying all public records that are not exemptions listed in former RCW 42.17.260(6) or that are subject to any "other statute which exempts or prohibits disclosure of specific information or records." Former RCW 42.17.260(1). The attorney-client privilege set out in RCW 5.60.060(2) is one of those statutory protections of confidentiality that exempts documents from the PRA. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 453, 90 P.3d 26 (2004); *Soter v. Cowles Publ'g Co.*, 131 Wn. App. 882, 902, 130 P.3d 840 (2006), *aff'd*, 162 Wn.2d 716, 174 P.3d 60 (2007). Under RCW 5.60.060(2), "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." Courts interpret this privilege as applying to all communications and advice between an attorney and client, including from the attorney to the client. *Soter*, 131 Wn. App. at 903. And this privilege applies whether or not the communication is relevant to a controversy. *Hangartner*, 151 Wn.2d at 451-52; *Soter*, 131 Wn. App. at 903.

¶80 The Zinks contend the trial court erred by basing its attorney-client exemptions on whom the correspondence

was sent to or received from rather than on the content of the documents. They assert some of the documents did not concern litigation, some could have been redacted, and some had been released previously to the public, waiving the exemption.

¶81 A communication between an attorney and his or her client is protected under the attorney-client privilege if it is made in confidence. *Morgan v. City of Federal Way*, 166 Wn.2d 747, 757, 213 P.3d 596 (2009). Review of the record shows that the trial court exempted the communications that were between the city attorney and Mesa employees or officials. These communications were properly exempted, whether or not they were relevant to litigation, as long as they were made in confidence. *See Hangartner*, 151 Wn.2d at 452; *Soter*, 131 Wn. App. at 903.

¶82 The Zinks specifically contend two of the documents—an e-mail to the city attorney from the city clerk and a letter from the city attorney to the city clerk—were released to the public or admitted as exhibits and, thus, are no longer protected by the privilege because they were not treated as confidential. When a client reveals information to a third party, the attorney-client privilege is waived unless the third party is necessary for the communication or has retained the attorney for a common interest. *Morgan*, 166 Wn.2d at 757. To the extent Mesa disclosed some of the attorney-client communications before or during litigation, Mesa waived the exemption. *Id.* Accidental release of all the communications on appeal, however, did not waive the exemption for all of the documents because the disclosure was unpreventable and inadvertent. *See Sitterson v. Evergreen Sch. Dist. No. 114*, 147 Wn. App. 576, 587-88, 196 P.3d 735 (2008).

¶83 Finally, when an exemption under the PRA applies and records contain both exempt and nonexempt information, exempt information may be redacted. *Mechling v. City of Monroe*, 152 Wn. App. 830, 850, 222 P.3d 808 (2009), *review denied*, 169 Wn.2d 1007 (2010); former RCW 42.17.310(2). After in camera review, the trial court ex-

empted the communications between the city attorney and Mesa officials. Because this communication is protected by the attorney-client privilege, disclosure of redacted correspondence is not appropriate. *Mechling*, 152 Wn. App. at 852 (communications between an attorney and client are privileged regardless of whether they are relevant to a controversy); *Soter*, 131 Wn. App. at 903.

¶84 We conclude that attorney-client communications that were released before or during litigation waived the exemption. But the remaining documents determined by the trial court to be exempt remain so. And we recognize Mesa's position that the issue is moot due to inadvertent release.

VI. Request for Signed Minutes of Certain Board Meetings

¶85 On March 7, 2003, the Zinks requested signed minutes of the October 2002, December 2002, and January 2003 Board meetings. The minutes of these meetings were signed at the March 5, 2003 Board meeting but then disappeared. On April 15, 2003, the city clerk gave Ms. Zink unsigned copies of the October 2002, December 2002, and January 2003 Board meetings. The Zinks now contend the trial court erred in finding that the draft copies were sufficient to satisfy their PRA request.

¶86 Destruction of records that are subject to a pending record request is a violation of the PRA. *O'Neill*, 170 Wn.2d at 148-49. The Zinks requested signed minutes of particular Board meetings that existed on March 5, 2003, when the minutes were signed. The Zinks contend Mesa intentionally lost or destroyed the minutes and, thus, violated the PRA. But the trial court, after hearing the testimony of the city clerk and considering the record, found that there was no evidence that Mesa intentionally withheld or destroyed the signed minutes. The court also found no indication that the unsigned copies of the minutes provided to the Zinks were any different from the original signed minutes.

¶87 The purpose of the PRA is to provide full access to information concerning the conduct of government. *Amren*, 131 Wn.2d at 31; *Mechling*, 152 Wn. App. at 841-42. Here, the record shows that the Zinks eventually obtained the Board minutes they sought, even if not in the same documents they sought—the signed copies. Accordingly, the trial court did not err in finding that Mesa complied with the PRA request when it gave the Zinks the unsigned copies.

VII. Penalty Period Limited by Statute of Limitations

¶88 Under RCW 42.17.410, any action brought under the PRA must be commenced within five years after the date when the violation occurred.[6] On cross appeal, Mesa contends the per-day penalty period for its PRA violations is limited by the statute of limitations to 1,827 days, representing five years plus two leap year days. Mesa cites *Yousoufian* 2004, which states that "the only limitation on the number of days comprising the penalty period is the five-year statute of limitations." *Yousoufian* 2004, 152 Wn.2d at 437.

¶89 Mesa confuses the time limit for bringing a PRA complaint with the penalty period for noncompliance with the PRA. Once a PRA action is filed, only those violations that occurred within five years of the filing are subject to the suit. RCW 42.17.410. Violations that occurred during the five-year limitation period, however, will be penalized for each day that the requester was denied the right to inspect or copy the public record. Former RCW 42.17.340(4). Because the Zinks filed their PRA suit less than one year after their public record requests, the statute of limitations does not bar any of their claims. RCW 42.17.410.

---

[6] In 2005, the legislature amended former RCW 42.17.340 to include the statute of limitations for judicial review of PRA actions. LAWS OF 2005, ch. 483, § 5, *recodified as* RCW 42.56.550. The amendment provided that PRA actions "must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." RCW 42.56.550(6).

## VIII. Penalty for Documents Released before Suit Filed

¶90  Finally, Mesa contends on cross appeal that the trial court erred in awarding penalties for documents that were released before the Zinks filed suit. Under former RCW 42.17.340(4), a person who prevails against an agency in an action "seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time" is entitled to reasonable attorney fees and costs. Additionally, the prevailing person is entitled to the per-day penalty for each day he or she "was denied the right to inspect or copy said public record." Former RCW 42.17.340(4). Mesa argues that when the agency fully complies with the public record request before the requester files suit, the requester is not entitled to penalties because the suit was not necessary to obtain relief.

¶91  The PRA requires timely disclosure of public records. *Yousoufian* 2004, 152 Wn.2d at 424-25 (citing former RCW 42.17.340(4)). The merits of a PRA claim are determined based on the circumstances existing at the time of the request. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 101, 117 P.3d 1117 (2005). Prevailing party status under the PRA is not conditioned on causing disclosure of the requested records. *Id.* at 103. "Rather, the 'prevailing' relates to the legal question of whether the records should have been disclosed on request." *Id.* Penalties are properly assessed for the time between the request and the disclosure, even if the disclosure had nothing to do with the lawsuit. *Id.* at 104. Accordingly, the trial court here properly assessed fees, costs, and sanctions for untimely responses to requests and improper withholding of records that were produced before the lawsuit was filed. *Id.* at 103-04, 106.

¶92  Mesa also contends some of the requested records—correspondence from the Zinks to Mesa—were already held by the Zinks before they were requested. This contention is without merit. As the Zinks note, they re-

quested conformed copies of the correspondence in order to show that Mesa received the correspondence and the date of receipt. Date-stamped copies of correspondence from the Zinks were within Mesa's records and were properly subject to a public record request. Former RCW 42.17.020(36) (definition of a "public record").

## IX. Attorney Fees and Postjudgment Interest

¶93 Under former RCW 42.17.340(4), the PRA awards the prevailing party on appeal all costs, including reasonable attorney fees. *Sanders*, 169 Wn.2d at 869. The Zinks request attorney fees and costs as the prevailing party on appeal. Mesa responds that the Zinks do not prevail on appeal because the entire judgment must be vacated and remanded, and the judgment on remand will probably be lower due to consideration of mitigating factors.

¶94 Determination of the prevailing party in an appeal of a PRA judgment relates to the question whether the records should have been disclosed on request and whether the requester had a right to receive a response. *Sanders*, 169 Wn.2d at 870. Although the amount of the penalties awarded here must be reversed and remanded for consideration of the *Yousoufian* 2010 factors, the Zinks prevail on appeal regarding their entitlement to per-day penalties from Mesa for withholding records and untimely responding to the Zinks' requests. Accordingly, the Zinks are entitled to reasonable attorney fees and costs expended on these issues. *See id.* at 870-71.

¶95 The Zinks also request postjudgment interest from the date of the 2008 judgment. Postjudgment interest accrues from the time of the original judgment only on those portions of the judgment that are wholly or partly affirmed on appeal. RCW 4.56.110(4); *Sintra, Inc. v. City of Seattle*, 96 Wn. App. 757, 762, 980 P.2d 796 (1999). When the appellate court in reversing merely modifies the award and the only action necessary on remand is application of a mandated mathematical formula, interest runs from the date of the original judgment. *Fisher Props., Inc. v. Arden-*

*Mayfair, Inc.*, 115 Wn.2d 364, 373, 798 P.2d 799 (1990) (quoting *Fulle v. Boulevard Excavating, Inc.*, 25 Wn. App. 520, 522, 610 P.2d 387 (1980)); *Sintra*, 96 Wn. App. at 763. If, however, the trial court on remand must engage in fact finding or an exercise of discretion, interest runs from the new judgment. *Coulter v. Asten Grp., Inc.*, 155 Wn. App. 1, 15, 230 P.3d 169 (quoting *Fisher*, 115 Wn.2d at 373), *review denied*, 238 P.3d 503 (2010). On remand here, the trial court may consider new evidence, must enter new findings of fact, and will exercise its discretion in awarding per-day penalties based on *Yousoufian* 2010. Accordingly, interest will run from the date of the new judgment on remand. *Fisher*, 115 Wn.2d at 373.

X. <u>Conclusion</u>

¶96 We reverse and remand the judgment amount for consideration of *Yousoufian* 2010. We affirm the remaining findings except for the trial court's (1) reduction of penalty days during the period from the trial court's first decision to the overturning of that decision on appeal; (2) allowance of five business days to respond even when Mesa denied some requests within five days; (3) finding that Mesa reasonably delayed production of the Cade Scott reply to May 30, 2003; and (4) finding that all communications between the city attorney and Mesa were exempt, even those released before or during litigation.

¶97 Finally, we award attorney fees, costs, and interest as specified above.

SWEENEY and SIDDOWAY, JJ., concur.

Reconsideration denied July 28, 2011.

Review denied at 173 Wn.2d 1010 (2012).